[No. B175397. Second Dist., Div. Seven. Nov. 16, 2005.]

In re Marriage of JUDY and MAURICE SCHMIR.
JUDY SCHMIR, Appellant, v.
MAURICE SCHMIR, Respondent.

**COUNSEL**

Geragos & Geragos, Gregory R. Ellis and Christopher L. Campbell for Appellant.

Buter, Buzard, Dunaetz & Fishbein and Glen S. Buzard for Respondent.

OPINION

**JOHNSON, J.**—Judy Schmir, a 61-year-old woman who had been unemployed for 14 years, appeals from an order terminating her $5,800-a-month spousal support from her ex-husband, Maurice Schmir.[1] Judy contends the order is not supported by substantial evidence and the trial court erred in imputing earned income to her without first giving her fair advance notice and opportunity to secure employment. We find there was substantial evidence to justify terminating Judy's spousal support but the trial court abused its discretion in doing it so abruptly as to deny Judy reasonable notice and an opportunity to find a job.

## FACTS AND PROCEEDINGS BELOW

Judy and Maurice married in 1964 and separated in 1987. In 1989 their marriage was dissolved by a judgment based on a marital settlement agreement. The judgment provided that after the sale of the family residence Maurice would pay Judy spousal support in the sum of $5,800 per month until the death of either party, Judy's remarriage, or further order of the court. The judgment recited Judy had no present employment or professional income and had unreimbursed medical expenses of approximately $2,000 per month. Neither the settlement agreement nor the judgment contained a "*Richmond* order" terminating spousal support jurisdiction as of a specific date[2] nor a "*Gavron* warning" advising Judy she needed to become self-sufficient or face onerous legal and financial consequences.[3]

Maurice made the agreed-upon payments to Judy without objection until January 2003, when he sought an order modifying or terminating Judy's support.

Maurice alleged three changes in Judy's circumstances which justified reducing Judy's spousal support: (1) Judy had returned to work; (2) Judy had reached the age when she could draw on her IRA without penalty; and (3) there had been a reduction in Judy's unreimbursed medical expenses.

In June 2003 the court ordered Judy's support reduced to $2,000 per month on an interim basis pending a further hearing on the matter.

Discovery was conducted, Judy underwent two vocational examinations and a hearing with live testimony was held, following which the trial court

---

[1] As is the custom in dissolution matters we will refer to the parties by their first names.

[2] *In re Marriage of Richmond* (1980) 105 Cal.App.3d 352, 356 [164 Cal.Rptr. 381].

[3] *In re Marriage of Gavron* (1988) 203 Cal.App.3d 705, 712 [250 Cal.Rptr. 148].

granted Maurice's request to modify the spousal support order. The court found there had been three changes in circumstances since the original support order. Although Judy had not returned to work she was capable of obtaining employment as a licensed clinical social worker at a gross salary of $2,500 per month; she was eligible to draw without penalty on her IRA which had a value in excess of half a million dollars and her medical expenses had decreased from $2,000 per month to $500 per month. Based on these changes in circumstances the trial court ordered Judy's support reduced to zero the following month, ordered Maurice to contribute $12,000 to Judy's attorney fees in the proceeding, and retained jurisdiction over spousal support.

Judy filed a timely appeal.

## DISCUSSION

### I. *THE TRIAL COURT'S FINDING OF CHANGES IN JUDY'S CIRCUMSTANCES IS SUPPORTED BY SUBSTANTIAL EVIDENCE.*

#### A. *Standard of Review.*

The modification of a spousal support order is reviewed on appeal for abuse of discretion. In exercising its discretion the trial court must follow established legal principles and base its findings on substantial evidence.[4] If the trial court conforms to these requirements its order will be upheld whether or not the appellate court agrees with it or would make the same order if it were a trial court.

For a change in circumstances to exist there must have been a material change since the entry of the previous order. In other words if the circumstances in question existed at the time of the previous order those circumstances presumably were considered when the previous order was made and bringing them to the court's attention years later does not constitute a "change" in the circumstances.[5] Nor has there been a change in circumstances merely because a different trial judge disagrees with the previous order.[6]

In the present case the trial court found three changes in circumstances: Judy is presently employable as a licensed clinical social worker; Judy's

---

[4] *In re Marriage of Aninger* (1990) 220 Cal.App.3d 230, 237–238 [269 Cal.Rptr. 388].

[5] *In re Marriage of Aninger, supra,* 220 Cal.App.3d at page 238.

[6] *In re Marriage of Aninger, supra,* 220 Cal.App.3d at page 238.

medical expenses have decreased to $500 a month; and Judy is now eligible to withdraw funds from her retirement account without penalty. Judy challenges each of these findings as not supported by substantial evidence.

B. *The Record Supports a Change in Circumstances Based on Judy's Present Ability to Earn Income as a Licensed Clinical Social Worker.*

The trial court found Judy is presently able to earn a minimum of $2,500 per month as a licensed clinical social worker (LCSW) and that this constitutes a change in circumstances since the original spousal support order in 1989. The evidence is undisputed Judy was not earning income as an LCSW or in any other field of employment at the time of the original order and has not engaged in gainful employment at any time since that order.

Judy maintains she cannot earn income as an LCSW but even if she could this would not constitute a change in circumstances because she was an LCSW at the time of the original judgment awarding her spousal support.[7]

The change in circumstances, however, is not based on Judy's credentials as an LCSW but on her postjudgment regaining of the ability to practice this profession. In her responsive declaration to the order to show cause Judy explained that commencing in the mid-1980's, "I had to deal with new and indeed life altering stressors all of which were related to the final unraveling of the marriage, including the five years of the divorce and community property distribution proceedings. . . . Finally, overwhelmed and exhausted, I stopped practicing [as an LCSW] altogether in May, 1988. I have not practiced as a psychotherapist since then and I have not been gainfully employed since May 1988."

There is substantial evidence in the record from which the trial court could find these "life altering stressors" no longer interfered with Judy's ability to practice her profession. To start with, the court reasonably could infer from the mere passage of time—14 years—that Judy was no longer "overwhelmed and exhausted" from her divorce experience. This inference is supported by the fact Judy did not mention psychological or emotional problems in discussing her health with the vocational expert who interviewed her in June 2003. Moreover, in this interview Judy stated she was the secretary and treasurer of her condominium association from 1991 to 1996 and in the course of this service she was engaged in "a full time job negotiating [with]

---

[7] Compare *In re Marriage of Aninger, supra,* 220 Cal.App.3d at page 238.

contractors, experts and attorneys relating to a lawsuit regarding construction problems as well as coordinating repairs" at the condominium complex. Judy also stated she had recently rejoined the association board of directors to help complete the final project. If Judy was psychologically and emotionally able to engage in a full-time job negotiating with contractors, experts and attorneys over repairs to a condominium complex, the trial court could reasonably conclude she was psychologically and emotionally capable of returning to her past employment as an LCSW. Finally, the undisputed evidence showed Judy has a master's degree in social work from the University of Southern California, has kept her license current for the past 14 years, completes 36 hours of continuing education every two years and has remained an active member of the Academy of Certified Social Workers.

Judy argues, citing Code of Civil Procedure section 634, the evidence described above cannot be used to support the trial court's finding of changed circumstances because the court's statement of decision did not rely on a change in her psychological condition. We disagree.

Under section 634 of the Code of Civil Procedure the losing party must state any objection to the trial court's statement of decision on an issue in order to avoid an implied finding on appeal in favor of the prevailing party on the issue. If omissions or ambiguities in the trial court's statement are timely brought to the court's attention an appellate court will not imply findings of fact in favor of the prevailing party on that issue.[8] But Judy did not object to the statement of decision on the ground the trial court omitted a decision on the issue of changed circumstances or on the ground the trial court's decision was ambiguous.

Neither Code of Civil Procedure section 634 nor the cases Judy relies on[9] support her argument that in determining the sufficiency of the evidence to support a finding we are limited to the evidence cited in the trial court's statement of decision. This argument flies in the face of established rules of appellate review which require us to accept as true all evidence tending to establish the correctness of the findings of the trial court, resolve all conflicts

---

[8] *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133 [275 Cal.Rptr. 797, 800 P.2d 1227]. Code of Civil Procedure section 634 states: "When a statement of decision does not resolve a controverted issue, or if the statement is ambiguous and the record shows that the omission or ambiguity was brought to the attention of the trial court . . . it shall not be inferred on appeal . . . that the trial court decided in favor of the prevailing party as to those facts or on that issue."

[9] Judy cites us to *In re Arceneaux, supra,* 51 Cal.3d at pages 1133–1134, and *In re Marriage of Hoffmeister* (1987) 191 Cal.App.3d 351, 359–361 [236 Cal.Rptr. 543].

in the evidence in favor of the prevailing party, and indulge all legitimate and reasonable inferences to uphold the judgment.[10] Our review is not limited to only those facts the trial court mentions in its statement of decision but, like any appellate review, extends to the entire record.[11] This is apparent from the fact a statement of decision "need do no more than state the grounds upon which the judgment rests, without necessarily specifying the particular evidence considered by the trial court in reaching its decision."[12]

### C. *The Record Supports a Change in Circumstances Based on a Reduction in Judy's Monthly Medical Needs.*

The 1989 judgment of dissolution recited Judy "currently has medical expenses of approximately $2,000 per month."

In her income and expense declaration executed June 6, 2003, Judy stated she presently had unreimbursed medical expenses of $638 per month. In her declaration in opposition to modification of the support order she stated: "My uninsured medical expenses will run more than $500 per month just for regular check ups, medications, lab tests, and the like, all of which I quite simply cannot afford."

On appeal Judy argues the $638 figure does not reflect a reduction in her current medical needs but only a reduction in the amount she can afford to expend on those needs.

We are not persuaded. The declaration showing $638 in medical expenses was executed on June 6, 2003—*before* the trial court made an interim reduction in her monthly support payment from $5,800 to $2,000. Logically, if Judy could not meet her present medical needs out of her $5,800 a month support payment it would be she who sought to modify the support order. In addition, there is little likelihood a person whose necessary medical expenses are in the neighborhood of $2,000 per month would describe them as "more than $500 per month." That would be like a baseball player with a .333 batting average describing it as "more than .125."

### D. *The Record Supports a Change in Circumstances Based on Judy's Ability to Make Withdrawals from Her Retirement Account Without Penalty.*

The trial court found Judy's ability to draw from her individual retirement account without penalty constituted the final change in circumstances.

---

[10] *In re Marriage of Okum* (1987) 195 Cal.App.3d 176, 181–182 [240 Cal.Rptr. 458].

[11] In determining sufficiency of the evidence an appellate court cannot confine itself to " 'isolated bits of evidence' " but must " 'view the whole record.' " (*DiMartino v. City of Orinda* (2000) 80 Cal.App.4th 329, 336 [95 Cal.Rptr.2d 16] and cases cited therein.)

[12] *Muzquiz v. City of Emeryville* (2000) 79 Cal.App.4th 1106, 1125 [94 Cal.Rptr.2d 579].

Judy contends her ability to make penalty-free withdrawals from her retirement account is not a change in circumstances because the parties must have contemplated when they entered into their support agreement in 1989 Judy would reach the age when she could begin making withdrawals from the account without penalty.[13] Therefore her reaching the requisite age is not a *change* in circumstance but merely an aspect of the same circumstance existing at the time of the original support order in 1989.

Adopting Judy's line of reasoning would mean that as a matter of law the supporting spouse's attainment of retirement age could never constitute a change of circumstance for purposes of a motion to modify a support order. Numerous appellate court decisions have rejected such a result even though the parties in those cases clearly contemplated the supporting spouse would one day reach the age when he or she could legitimately retire.[14]

We also note Judy's ability to withdraw funds from her retirement account without penalty constitutes a "change in circumstance" when the "circumstance" being considered is Judy's assets available to provide for her own support.[15] In addition, when Judy's retirement account was created in 1989 as part of the parties' property settlement neither party could have reliably predicted its future value. Thus the growth of the account to more than double its original size can also be viewed as a change in circumstance.

For the reasons discussed above we hold the trial court's finding there had been changes in Judy's circumstances since the original spousal support order based on substantial evidence in the record.

## II. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN REQUIRING JUDY TO MAKE UP ANY SHORTFALL IN HER MONTHLY LIVING EXPENSES FROM HER IRA.

Even if Judy obtains employment at the rate of $2,500 a month[16] it is undisputed she will have to draw on her retirement account to make ends meet.

In *In re Marriage of Olson* the court observed "[t]he Legislature, in prescribing the factors to be considered by trial courts in fixing permanent

---

[13] For a discussion of the penalties for early withdrawal see *In re Marriage of Olson* (1993) 14 Cal.App.4th 1, 12–13 [17 Cal.Rptr.2d 480].

[14] See *In re Marriage of Reynolds* (1998) 63 Cal.App.4th 1373, 1379 [74 Cal.Rptr.2d 636], and cases cited.

[15] Whether Judy can be required to draw on this retirement fund in lieu of spousal support is a separate question we address below. See discussion in part II, *post.*

[16] See discussion in part III, *post.*

spousal support . . . has provided no specific guidance as to what consideration the court should give to contributions to or accruals in retirement plans."[17] The Legislature has, however, instructed trial courts that in setting spousal support they should consider among other things the "assets, including the separate property, of each party[,]" the "age and health of the parties[,]" the "balance of hardships to each party[,]" and "[a]ny other factors the court determines are just and reasonable."[18] The appellate courts have held in assessing a party's ability to pay spousal support a trial court may consider investment income.[19] By parity of reasoning trial courts assessing the supported party's needs should also consider that party's investment income. Finally, in considering the parties' retirement plans in setting spousal support courts have recognized it is necessary to weigh the public policy favoring provision for one's retirement against all other circumstances in the case.[20] Not surprisingly the court in *Olson* concluded "the trial court possesses broad discretion to determine whether to consider as income available for spousal support purposes contributions made by a participant to his or her retirement plan[.]"[21]

As we understand Judy's argument she contends the order terminating her spousal support should be reversed because the record contains no evidence of what sums she could and should reasonably withdraw from her IRA in lieu of the terminated support. For example there is no evidence of Judy's life expectancy, the tax consequences to her of withdrawing any particular sums of money from her account, how much money Judy would be required to withdraw or the resulting financial impact on her retirement nest egg. Judy maintains without this evidence it is impossible for us to determine whether the trial court abused its discretion in terminating her spousal support.

With the exception of Judy's life expectancy there is evidence in the record on all of these factual issues. Evidence of Judy's life expectancy is not necessary for reasons we shall explain. We find no abuse of discretion.

We discussed the tax consequences of Judy's withdrawals in part I of this opinion. The undisputed evidence shows Judy has reached the age where she can make withdrawals from her IRA without penalty. Therefore her withdrawals will be taxed as ordinary income just as her support payments were.

Terminating Judy's $5,800 a month spousal support would not require her to make a significant incursion into the principal of her retirement account in

---

[17] *In re Marriage of Olson, supra,* 14 Cal.App.4th at page 12.

[18] Family Code section 4320, subdivisions (e), (h), (k), and (n).

[19] *In re Marriage of Olson, supra,* 14 Cal.App.4th at page 10.

[20] *In re Marriage of Olson, supra,* 14 Cal.App.4th at page 13.

[21] *In re Marriage of Olson, supra,* 14 Cal.App.4th at page 13.

order to compensate for the lost income. By paying off her $11,000 mortgage out of her retirement account (which Judy could do without a substantial effect on her interest earnings) and by ceasing to make further contributions to the retirement account, Judy would save approximately $1,300 a month. The trial court found Judy could reasonably earn $2,500 a month as an LCSW leaving a gap of $2,000. A 4.5 percent rate of return on her $592,000 IRA would allow Judy to make withdrawals of $2,220 per month without reducing the principal.

Thus we see no basis for disturbing the trial court's order for abuse of discretion based on Judy's use of her retirement assets.

### III. THE IMPUTATION OF $2,500 PER MONTH IN EMPLOYMENT INCOME IS SUPPORTED BY SUBSTANTIAL EVIDENCE.

The trial court determined Judy had the present ability to earn a minimum of $2,500 a month as an LCSW. This finding is supported by substantial evidence.

A vocational examiner who interviewed Judy and reviewed her education and employment history stated she contacted five employers who were recruiting persons in Judy's field of experience. Two of the five stated Judy would qualify and the other three indicated she might qualify.

The salary range quoted by these hiring employers was between $22,880 and $72,000 per year. Three of the employers gave a range between $38,000 and $57,000 per year. The trial court explained that imputing the sum of $2,500 per month ($30,000 per year) it was choosing a figure at "the extreme low end."

### IV. THE TRIAL COURT ABUSED ITS DISCRETION IN IMPUTING EMPLOYMENT INCOME TO JUDY WITHOUT AFFORDING HER FAIR ADVANCE NOTICE AND A REASONABLE TIME TO SECURE A JOB.

Judy contends the trial court manifestly abused its discretion by pulling the plug on her spousal support after 14 years had gone by without any indication from Maurice or the court she was expected to become self-supporting through employment and giving her only three weeks to find a job. We concur.

To review, Judy and Maurice were married in 1964 and separated in 1987. The judgment of dissolution was entered in 1989. Judy last worked outside

the home in 1988. Neither the judgment nor the underlying marital settlement agreement contained a termination date for Judy's spousal support or any kind of notice she was expected to become self-supporting. Between 1989 and 2003 Judy received $5,800 a month in spousal support from Maurice. In January 2003, when Judy was 61 years old and had not been gainfully employed for 14 years, Maurice went to court for an order terminating Judy's support. Judy presented a viable opposition to the order but one which was ultimately unsuccessful. Ten months later, on October 7, the trial court announced from the bench its decision to terminate Judy's spousal support effective November 1.

We find no error in the termination order itself. However, under the circumstances presented in this case we conclude the trial court abused its discretion in terminating Judy's support without affording her a reasonable advance notice and opportunity to secure employment.

As recognized by our Supreme Court the public policy of this state has progressed from one which "entitled some women to lifelong alimony as a condition of the marital contract of support to one that entitles either spouse to postdissolution support for only so long as is necessary to become self-supporting."[22] Along with this change in attitude toward spousal support came the judicial recognition that before spousal support can be terminated or reduced the supported spouse—often an ex-wife with little or no job skills or a long history of unemployment outside the home—must be given fair notice of the expectation of self-sufficiency and a reasonable opportunity to achieve such goal.

The leading cases illustrating this judicial trend toward requiring fair notice and reasonable opportunity are *In re Marriage of Richmond* and *In re Marriage of Gavron*, discussed below.

In *Richmond* the trial court ordered husband to pay spousal support to wife in 1978. " 'Said obligation for spousal support shall continue through the month of September 1981, at which time spousal support shall forever terminate and the jurisdiction of this Court over the issue of spousal support shall terminate, unless prior to September 30, 1981, [wife] makes a showing of good cause to extend spousal support beyond that date.' "[23] The Court of

---

[22] *In re Marriage of Pendleton & Fireman* (2000) 24 Cal.4th 39, 53 [99 Cal.Rptr.2d 278, 5 P.3d 839]; and see Family Code section 4320, subdivision (*l*) requiring courts in ordering spousal support to consider "[t]he goal that the supported party shall be self-supporting within a reasonable period of time."

[23] *In re Marriage of Richmond, supra,* 105 Cal.App.3d at page 354.

Appeal found no abuse of discretion in setting an advance date for the termination of spousal support and placing the burden on the supported spouse to show good cause why support should be extended. Such an order, the court concluded, encouraged "supportive self-reliance" and discouraged "delay in preparation for or in seeking, or refusal of, available employment."[24] The appellate court also noted the trial court reasonably could have concluded it was probable wife would be self-sufficient by the designated cut-off date and that she, with the better access to relevant evidence, should bear the burden of making a contrary showing.[25] This decision led to what has become known as a "*Richmond* order"—an order providing the supported spouse with notice support will terminate on a specified date unless prior to this date the supported spouse shows good cause to extend it.

In *Gavron* the parties separated after a 25-year marriage. The judgment of dissolution ordered husband to pay support to wife, who was unemployed at the time of the dissolution and had limited job skills. Six years after entry of the judgment husband sought a modification of the support order. The trial court granted the requested modification, holding wife's failure to become employed after so many years constituted a change in circumstance which shifted the burden to her to demonstrate her continued need for support. Reversing the trial court's order, the Court of Appeal explained a supported spouse's failure to become self-supporting could, in an appropriate case, warrant modification of a support order. Nonetheless, "[i]nherent in the concept that the supported spouse's failure to at least make good-faith efforts to become self-sufficient can constitute a change in circumstances which could warrant a modification in spousal support is the premise that the supported spouse be made aware of the obligation to become self-supporting."[26] The court held in the absence of a "reasonable advance warning that after an appropriate period of time the supported spouse was expected to become self-sufficient or face onerous legal and financial consequences" failure of the supported spouse to become self-supporting cannot be a "changed circumstance" supporting a modification.[27] Thus, what has become known as a "*Gavron* warning" is a fair warning to the supported spouse he or she is expected to become self-supporting.

In 1996, after the judgment in the present case, the Legislature codified the *Gavron* warning in Family Code section 4330, subdivision (b) first making it

---

[24] *In re Marriage of Richmond, supra,* 105 Cal.App.3d at page 356.

[25] *In re Marriage of Richmond, supra,* 105 Cal.App.3d at page 356.

[26] *In re Marriage of Gavron, supra,* 203 Cal.App.3d at page 712.

[27] *In re Marriage of Gavron, supra,* 203 Cal.App.3d at page 712.

mandatory[28] then later discretionary.[29] The statute now reads: "When making an order for spousal support, the court may advise the recipient of support that he or she should make reasonable efforts to assist in providing for his or her support needs, taking into account the particular circumstances considered by the court pursuant to [Family Code] section 4320, unless, in the case of a marriage of long duration as provided for in [Family Code] section 4336, the court decides this warning is inadvisable."[30]

Maurice contends *Richmond* and *Gavron* are distinguishable from the present case and the trial court did not have to give Judy any advance warning before terminating her support. Such a warning, he maintains, only applies to spouses who need to take steps to *become* self-supporting not to spouses like Judy who already have the capability of earning an income.

*Richmond* is distinguishable, Maurice argues, because in the present case neither the settlement agreement nor the judgment set a specific cut-off date for spousal support. Rather they left that issue for "further order of the court."

*Gavron* is distinguishable because it addressed the issue of whether the supported spouse's failure to become self-supporting constituted a change of circumstance justifying a modification of the support order. Maurice is not relying on Judy's failure to obtain employment as a change of circumstance[31] but is relying instead on her present ability to engage in gainful employment as a ground for imputing income to her in order to reduce or terminate his support obligation. Similarly, the issue in this case is not whether the supported spouse was on notice she needed to *become* self-supporting, as it was in *Gavron*. Here substantial evidence showed Judy already had the ability to earn a living as an LCSW.[32] While fundamental fairness may have required notice to the wife in *Gavron* she needed to become self-supporting, this is not the case here. The wife in *Gavron* attended classes for one year at a city college and was "at best, marginally employable."[33] Judy on the other

---

[28] Statutes 1996, chapter 1163, section 2, page 8488.

[29] Statutes 1999, chapter 846, section 2.

[30] Family Code section 4320 lists a number of factors a trial court must consider in ordering spousal support including the earning capacity of each party, the "marketable skills of the supported party" and "[t]he goal that the supported party shall be self-supporting within a reasonable period of time." (Fam. Code, § 4320, subds. (a)(1), (*l*).) Family Code section 4336, subdivision (b) creates a rebuttable presumption a marriage of 10 years or more is "a marriage of long duration."

[31] See discussion in part I.B, *ante*.

[32] See discussion in part I.B, *ante*.

[33] *In re Marriage of Gavron, supra,* 203 Cal.App.3d at page 711.

hand has a master's degree from U.S.C., is currently licensed as a clinical social worker, has maintained her competence in her profession by attending continuing education classes and, according to both vocational experts who testified, is employable in her field.

Maurice also points out the warning under Family Code section 4330 is not mandatory but a matter of trial court discretion. Moreover, even if a *Gavron* warning is appropriate in a particular case a formal admonishment is not required. As *Gavron* itself recognized "[t]he prerequisite awareness of the judicial expectation of future self-sufficiency can arise in numerous contexts."[34] The court gave as an example "a motion and ensuing order that the supported party 'submit to an examination by a vocational training consultant[.]' "[35] Such an order was made in the present case. Judy was also put on notice she would need to go back to work by the order to show cause regarding modification of support which was filed 10 months before the order terminating her support. Thus Judy had twice the amount of time Ms. Gavron had to find a job before her support terminated.[36]

Judy in reply points to the factual similarities between this case and *Gavron*. In each case the wife was unemployed at the time of the dissolution judgment. Each marriage had been more than 20 years in duration. The judgment awarded spousal support to the wife without specifying any time limit or advising the wife she was required to become self-sufficient. At the time support was terminated the wife had no employment income. In each case the court terminated support with virtually no advance notice—Ms. Gavron received five months notice, Judy only received three weeks.[37]

In response to Maurice's claim she received advance notice of her need to obtain employment through the order to show cause and the vocational evaluations Judy argues the order to show cause raised triable issues of fact and significant issues of law and she should not be penalized for opposing the termination of her support instead of immediately submitting to it. Furthermore, the report by the vocational expert who found Judy presently capable of obtaining employment was not submitted to Maurice's counsel until August 2003, two months before her support was terminated, and there is no showing in the record when Judy became aware of the expert's report.

---

[34] *In re Marriage of Gavron, supra,* 203 Cal.App.3d at page 712.

[35] *In re Marriage of Gavron, supra,* 203 Cal.App.3d at page 712.

[36] *In re Marriage of Gavron, supra,* 203 Cal.App.3d at page 708.

[37] On October 7 the court announced its decision to terminate spousal support from the bench effective November 1.

■ In considering whether a supported spouse is entitled to an appropriate advance warning of the need to obtain employment we see no logical reason to distinguish between spouses who need to "become employable"[38] and spouses who are already employable. Equity and fairness require spouses in both classes receive a reasonable notice and opportunity to find employment. How much advance warning is reasonable obviously depends on the circumstances of each case. Spouses who need further education or training to become employable will usually need more advance warning than spouses who already possess job skills and only need to find suitable work. It is not possible to set a minimum or maximum warning time.

In the present case, however, three weeks' notice was clearly too short and even 10 months is problematic. The fact Judy had the present ability to earn income as an LCSW did not mean she had the ability to earn instantly. If Judy was going to work for an organization, as the vocational evaluators assumed, at a minimum she would need to prepare resumes, identify potential employers and go on job interviews. If, on the other hand, Judy was going to be a self-employed therapist, as she had been when she last practiced her profession, at a minimum she would need to arrange office space in her home or elsewhere, set up bookkeeping and appointment systems and build up a client base.

For the reasons explained above we conclude the trial court abused its discretion in terminating Judy's spousal support without affording her a reasonable advance notice and opportunity to find gainful employment.

There remains the question of remedy for this error. We believe fairness requires (1) Judy's support be returned to the amount of $5,800 per month retroactive to June 2003 (when the trial court ordered the reduction in her support to $2,000 per month) and (2) Judy's support continue at the rate of $5,800 per month from June 2003 to such time as Judy obtains employment at the rate of at least $2,500 per month or ceases to make a good faith effort to obtain such employment, or attains the age of 65 years, whichever occurs first. If Judy obtains employment at the rate of at least $2,500 per month or ceases to make a good faith effort to obtain such employment prior to attaining the age of 65, her support shall be reduced to zero. At the request of Maurice the trial court shall conduct a hearing to determine whether Judy is making a good faith effort to earn at least $2,500 per month. Such hearings, however, shall occur no more frequently than every three months.

---

[38] *In re Marriage of Gavron, supra,* 203 Cal.App.3d at page 711.

## DISPOSITION

The trial court's order of June 2003 is reversed insofar as it reduces Judy's support from $5,800 per month to $2,000 per month. In all other respects the order is affirmed. The trial court's order of March 2004 is modified by striking the provisions of paragraph 1 and inserting in their place the following: Judy's support continue at the rate of $5,800 per month from June 2003 to such time as Judy obtains employment at the rate of at least $2,500 per month or ceases to make a good faith effort to obtain such employment, or attains the age of 65 years, whichever occurs first. If Judy obtains employment at the rate of at least $2,500 per month or ceases to make a good faith effort to obtain such employment prior to attaining the age of 65 her support shall be reduced to zero. At the request of Maurice the trial court shall conduct a hearing to determine whether Judy is making a good faith effort to earn at least $2,500 per month. Such hearings, however, shall occur no more frequently than every three months. In all other respects the order is affirmed.

Appellant is awarded her costs on appeal.

Perluss, P. J., and Zelon, J., concurred.

A petition for a rehearing was denied December 9, 2005, and respondent's petition for review by the Supreme Court was denied February 8, 2006, S139974. Chin, J., did not participate therein.