Filed 3/5/25  Marriage of Prince CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of Sonia Prince and Robert Prince. | D084818 |
| Sonia Prince, <br><br> Respondent, <br><br> v. <br><br> Robert Prince, <br><br> Appellant. | (Super. Ct. No. RID239365) |

APPEAL from a postjudgment order of the Superior Court of Riverside County, Cheryl C. Murphy, Judge.  Affirmed.

Holstrom, Block & Parke and Ronald B. Funk for Appellant.

Law Offices of Rebekah Ryan Main and Rebekah Ryan Main for Respondent.

Robert Prince appeals from a postjudgment family court order denying his request to modify spousal support.  He contends the family court: (1) erroneously shifted to him the burden of showing his former wife (Sonia

Prince)[1] was not self-supporting despite the fact she previously received a warning to become self-supporting under *In re Marriage of Gavron* (1988) 203 Cal.App.3d 705 (*Gavron*), and (2) ignored the step-down provision in the parties' judgment of dissolution and "its implied presumption of reduced needs" for Sonia's spousal support. We affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

The parties were married in May 1993, and separated in 2010. A July 2011 judgment of dissolution included the following step-down provision stating spousal support would be "$2,500.00 until December 31, 2011; commencing January 1, 2012, spousal support decreased to $2,000.00 per month; commencing January 1, 2013, spousal support decreased to $1,750.00 per month for [a] period of [three] years; commencing January 1, 2016[,] spousal support decreased to $1,650 per month. Spousal support is not modifiable as long as terms herein are complied with." The support award was based on Sonia's then gross monthly income of $1,106.00, and Robert's of $13,457.00.

The judgment of dissolution included this provision: "[Sonia] to use best efforts at employment where she is able to support herself." Similarly, the California Judicial Council form outlining the terms of the dissolution provides: "**NOTICE**: It is the goal of this state that each party will make reasonable good faith efforts to become self-supporting as provided for in Family Code section 4320.[2] The failure to make reasonable good faith

---

[1]  We refer to the parties by their first names to avoid confusion, and intend no disrespect.

[2]  Undesignated statutory references are to the Family Code.

2

efforts may be one of the factors considered by the court as a basis for modifying or terminating spousal or partner support."

In the judgment of dissolution, the court reserved full jurisdiction over Robert's retirement and pension benefits.

In April 2021, Robert moved to modify the spousal support order and requested to terminate his obligation to pay spousal support. He stated in a declaration that he was retired: "My retirement income will be substantially lower than my earnings while working. [Sonia] will begin receiving her share of my retirement to supplement her income, she earns substantially more today than she did at the time of judgment, I have paid support to her for over ten years and finally a *Gavron* warning was issued in 2011."

Sonia stated in her responsive declaration that the parties had "bargained for a non-modifiable step-down order which started at significantly lower than the marital standard of living, in exchange for non-modifiability." She concluded: "We did not have a trial on [section] 4320 factors and the spousal support orders to which we agreed were insufficient to meet the marital standard of living at the time that judgment was entered. The stipulated step-down orders says [*sic*] 'Spousal support is not modifiable as long as terms herein are complied with.' I have complied with every term. I did what I was obligated to do and made reasonable efforts to provide for my own support, and I have made up the difference between the reduced spousal support and the marital standard of living, ***as agreed***."

The court set a contested hearing regarding spousal support modification under section 217, and suspended spousal support temporarily. Sonia subsequently withdrew her contention that spousal support was unmodifiable. In a joint pretrial filing, the parties agreed the judgment of dissolution was modifiable.

The family court ordered the parties to file briefs regarding each applicable section 4320 factor. They complied, and in a joint declaration addressed several of them. They also agreed the "marital standard of living required spending of approximately $14,000.00 per month at the time of judgment"; Sonia was not yet self-sufficient; and during the marriage, Robert was employed as a firefighter. He eventually attained the position of captain. Sonia managed the home and provided primary care and responsibility for raising their son. They also agreed that as Robert was no longer paying child support, his income had increased and Sonia's had decreased. The parties submitted information regarding their respective incomes and expenses. In response to section 4320, subdivision (h), which inquired about the "age and health of the parties," they responded that Sonia was then 58 years old and had high blood pressure. Robert was 57 years old and disabled.

At the start of the evidentiary hearing, Sonia's counsel traced the case's procedural posture and Robert's burden as follows: "[Robert's counsel] and I went over my understanding of procedurally what we're here for today. . . . [¶] . . . [It's Robert's] request for an order to modify or terminate postjudgment spousal support that brings us here, which means he should go first with his case-in-chief, and he has to carry that initial burden before my client is required to do anything,[.]" Robert's counsel stated "Yes. That's correct." The court agreed: "[T]he respondent should go first and present his case-in-chief, and it would be his burden as to his request to modify spousal support."

Both parties testified at the hearing. At the close of evidence, the parties submitted closing briefs.

The family court's tentative ruling stated: "The parties stipulated that the permanent spousal support order per the judgment [of dissolution], is

4

modifiable." The court summarized Robert's assets as follows: $684,792.54 in a deferred compensation plan through his previous employer; a Primerica stock account and a T.D. Ameritrade account with the sum of $38,000; a credit union account had a balance of $37,052; his home was worth one million dollars with an equity of $600,000. He owns a race car. His other vehicles and boats are valued at $96,000. The court also stated Robert's child support order terminated in July 2022, thus his monthly income increased by $1,100 and Sonia's decreased by that same amount.

Summarizing Sonia's income and net worth, the court stated her evidentiary submissions showed "no real estate, a car with a negative $2,000.00 value, minimal bank account deposits, and her deferred compensation benefits from [Robert's] retirement benefits is currently about [one quarter] of the amount received by [Robert]."

The court concluded based on Robert's 2022 tax return and his 2023 income and expense declaration that his "argument that he can't pay any amount of spousal support is unsupported by the evidence." It further concluded that excluding his income from his 457(b) deferred compensation plan and other sources, "the evidence shows that [Robert] has net income available for support of at least $11,133.01 per month from his [ ] retirement. . . . This income alone exceeds the net spendable income on which both the child support and spousal support order in the judgment were based. The evidence supports that [Robert] is earning more from his [pension plan's] largely non-taxable income now than he earned from working at the time of judgment."

The court addressed several section 4320 factors, including subdivision (a)(1) regarding "[t]he marketable skills of the supported party." It ruled: "[Sonia] is 58 years old and has a high school diploma. She has no further

5

education, training, or marketable skills.  No evidence was presented at trial to support a finding that [she] has  employment opportunities other than her current self-employment . . . .  The fact of the matter is that the job market is limited for someone of her age without a formal education, experience and/or training; and while [Sonia] was cognizant of this fact, she opened a small business in order to supplement her income and in an effort to provide for her own support.  [Sonia] expects that [her] business will increase with time, but presently she[ ] receives little to no profits or personal income even though the business is operational."

The court disagreed with Robert's contrary contention:  "[He] testified that [Sonia] had marketable skills as a grocery clerk, a waitress and office clerking.  [She] testified to working as a waitress for 10 years.  However, no evidence was presented on which the court can conclude that [she] has been intentionally underemployed, as no evidence of ability and available work opportunities was presented at trial.  [He] asserted [she] had passive income from a large fruit producing property in Mexico but this allegation was not supported by credible evidence."

The court addressed the section 4320, subdivision (*l*) factor regarding the goal that the supported party shall be self-supporting within a reasonable period of time:  "While the judgment [of dissolution] included language that [Sonia was] to use best efforts at employment where she is able to support herself, which sounds like a *Gavron* warning, this was a marriage of long duration.  [Sonia] has a high school education, and no evidence was admitted[ ] to demonstrate that she has had the opportunity to improve her education or job skills.  [She] testified that she is an artist, who has been conducting a business that was negatively impacted by the Covid 19 global pandemic, and which has not yet recovered.  At the time of this order, [Sonia]

6

is not yet self-supporting.  No evidence that [she] has or had opportunities to increase her income, or employment opportunities were available to [Sonia], over and above her efforts to work as an artist.  [¶]  [Robert] is the party with the burden to prove that [Sonia] has the ability to do more to contribute to her own support, and no evidence, other than the mere passage of time, was presented to support this argument."

The court concluded Robert failed to meet his burden of showing a material change in circumstances under section 4320, and the evidence did not "support a downward modification or termination of the permanent spousal support order at this time."  It therefore ordered "the reinstatement of the spousal support order as contained in the Judgment in the sum of $1,650.00 per month" plus arrears in the amount of $16,500.

Neither party requested a statement of decision or objected to the tentative decision.  The findings and order after hearing on Robert's request to modify spousal support was entered on October 6, 2023.  Robert timely appealed.

DISCUSSION

I.  Gavron <em>Warning</em>

Robert contends the court erroneously disregarded "the burden of proof placed on Sonia as a matter of law by the *Gavron* warning in the judgment . . . in denying [his] request to reduce or terminate support.  The court reversed the burden, erroneously placing on [him] the burden to prove that Sonia did not use her best efforts to become self-supporting, when it is clearly Sonia, under California case and statutory law, who has the burden to prove she has taken reasonable steps to make herself self-supporting, but has failed despite those."

7

Sonia counters: "Even if Robert had not conceded it at the start of trial and then again in his written closing argument, it is long and well-settled that the party moving to modify spousal support bears the initial burden of proof." She claims, "The trial court correctly found that Sonia had not received a true *Gavron* warning. This is a finding of fact, for which the doctrine of implied findings . . . applies."

A. *Standard of Review and Applicable Law*

"A spousal support order is modifiable only upon a material change of circumstances since the last order. 'Change of circumstances' means a reduction or increase in the supporting spouse's ability to pay and/or an increase or decrease in the supported spouse's needs. It includes all factors affecting need and the ability to pay. Where there is no substantial evidence of a material change of circumstances, an order modifying a support order will be overturned for abuse of discretion." (*In re Marriage of West* (2007) 152 Cal.App.4th 240, 246.) " 'Absent a change of circumstances, a motion for modification is nothing more than an impermissible collateral attack on a prior final order.' " (*In re Marriage of Khera & Sameer* (2012) 206 Cal.App.4th 1467, 1479.)

" ' "Permanent spousal support 'is governed by the statutory scheme set forth in sections 4300 through 4360. Section 4330 authorizes the trial court to order a party to pay spousal support in an amount, and for a period of time, that the court determines is just and reasonable, based on the standard of living established during the marriage, taking into consideration the circumstances set forth in section 4320." ' " (*In re Marriage of Maher & Strawn* (2021) 63 Cal.App.5th 356, 363.)

After spousal support has been ordered, "[t]he trial court has broad discretion in deciding whether to modify a spousal support order based upon

8

changed circumstances." (*In re Marriage of Swain* (2018) 21 Cal.App.5th 830, 836.) "In exercising its discretion, the trial court considers the same criteria set forth in section 4320 as it was obligated to consider in making the initial support order." (*Ibid.*)[3]

[3] Section 4320 provides: "In ordering spousal support under this part, the court shall consider all of the following circumstances:

"(a) The extent to which the earning capacity of each party is sufficient to maintain the standard of living established during the marriage, taking into account all of the following:

"(1) The marketable skills of the supported party; the job market for those skills; the time and expenses required for the supported party to acquire the appropriate education or training to develop those skills; and the possible need for retraining or education to acquire other, more marketable skills or employment.

"(2) The extent to which the supported party's present or future earning capacity is impaired by periods of unemployment that were incurred during the marriage to permit the supported party to devote time to domestic duties.

"(b) The extent to which the supported party contributed to the attainment of an education, training, a career position, or a license by the supporting party.

"(c) The ability of the supporting party to pay spousal support, taking into account the supporting party's earning capacity, earned and unearned income, assets, and standard of living.

"(d) The needs of each party based on the standard of living established during the marriage.

"(e) The obligations and assets, including the separate property, of each party.

"(f) The duration of the marriage.

"(g) The ability of the supported party to engage in gainful employment without unduly interfering with the interests of dependent children in the custody of the party.

"(h) The age and health of the parties.

"(i) All documented evidence of any history of domestic violence . . . between the parties or perpetrated by either party against either party's child . . . .

"(j) The immediate and specific tax consequences to each party.

"(k) The balance of the hardships to each party.

"(*l*) The goal that the supported party shall be self-supporting within a reasonable period of time. Except in the case of a marriage of long duration

9

"Although by statute the trial court must consider section 4320 factors in deciding whether to modify a spousal support order, the statute does not purport to require the court to address each factor expressly." (*In re Marriage of Diamond* (2021) 72 Cal.App.5th 595, 602.) Further, "[a]fter considering the marital standard of living along with the other statutory factors, 'the court may "fix spousal support at an amount greater than, equal to or less than what the supported spouse may require to maintain the marital standard of living, in order to achieve a just and reasonable result under the facts and circumstances of the case." ' " (*In re Marriage of Grimes & Mou* (2020) 45 Cal.App.5th 406, 425.) " 'While spouses must support each other during marriage [citation], the court has been given greater discretion in marital dissolutions to deny spousal support altogether or to limit such support in an amount and duration that reflects the ability of both parties in contemporary unions to provide for their own needs.' [Citation.] 'The law . . . entitles either spouse to postdissolution support for only so long as necessary to become self-supporting.' " (*Id.* at p. 425.)

"The court has discretion as to the weight it gives to each factor [citation], and then ' "the ultimate decision as to amount and duration of spousal support rests within its broad discretion and will not be reversed on appeal absent an abuse of [its] discretion." ' " (*In re Marriage of Shimkus* (2016) 244 Cal.App.4th 1262, 1273.) " 'In exercising its discretion the trial court must follow established legal principles and base its findings on

---

. . . However, nothing in this section is intended to limit the court's discretion to order support for a greater or lesser length of time, based on any of the factors listed in this section . . . and the circumstances of the parties. "(m) The criminal conviction of an abusive spouse shall be considered in making a reduction or elimination of a spousal support award . . . .
"(n) Any other factors the court determines are just and equitable." (§ 4320.)

substantial evidence. . . . If the trial court conforms to these requirements its order will be upheld whether or not the appellate court agrees with it or would make the same order if it were a trial court.' " (*In re Marriage of West, supra,* 152 Cal.App.4th at p. 246.) " ' "Because trial courts have such broad discretion, appellate courts must act with cautious judicial restraint in reviewing these orders." ' " (*In re Marriage of McLain* (2017) 7 Cal.App.5th 262, 269.)

As stated, section 4320, subdivision (a) requires that in awarding spousal support, the court consider the extent to which the supported party possesses, or may come to possess, marketable employment skills sufficient to achieve the marital standard of living. Further, section 4320, subdivision (*l*) directs the court to also consider "[t]he goal that the supported party shall be self-supporting within a reasonable period of time." "Whether there has been such unreasonable delay is a question addressed peculiarly to the trial court which heard the party's testimony and observed the party's demeanor at trial." (*In re Marriage of Sheridan* (1983) 140 Cal.App.3d 742, 749.)

B. *Analysis*

As Robert took the position at trial that he had the burden of showing changed circumstances to support his motion to modify spousal support, on appeal he has forfeited any claim that the family court erroneously allocated the burden of proof. "[A]n appellant waives his right to attack error by expressly or implicitly agreeing or acquiescing at trial to the ruling or procedure objected to on appeal." (*In re Marriage of Broderick* (1989) 209 Cal.App.3d 489, 501.)

Separate from his burden below, however, Robert has not met his appellate burden of establishing that the family court abused its discretion in denying a termination of spousal support. (*Denham v. Superior Court* (1970)

11

2 Cal.3d 557, 566 ["a reviewing court should not disturb the exercise of a trial court's discretion unless it appears that there has been a miscarriage of justice"].) The court relied on many section 4320 factors and thus its decision was not arbitrary, capricious or whimsical. The court specifically addressed Sonia's failure to become self-supporting and concluded she had a high school education, was an artist, had tried to run her business, but her efforts were stymied by the Covid-19 pandemic. The court therefore impliedly found that Sonia made reasonable efforts to become self-supporting, consistent with the *Gavron* warning.

As we have explained, the trial court has significant discretion in making a spousal support award once it has considered the factors set forth in section 4320. (*In re Marriage of Shimkus, supra*, 244 Cal.App.4th at p. 1273.) The record shows that the trial court fully and thoroughly considered the relevant factors before concluding that a modification of monthly spousal support was not appropriate. Robert's disagreement with the manner in which the family court weighed the section 4320 factors does not establish an abuse of discretion.

Moreover, Robert does not present, and our independent research has not disclosed, authority that *requires* a court to terminate support following a *Gavron* warning. Under *Gavron*, a supported party must be given fair notice of the expectation of self-sufficiency and a reasonable opportunity to achieve such a goal *before terminating support* (*In re Marriage of Schmir* (2005) 134 Cal.App.4th 43, 55, citing and quoting *Gavron, supra*, 203 Cal.App.3d at p. 712); however, just because the supported party has been given such notice and opportunity does not mean that, if the goal is not achieved, support must be terminated. Because "[t]rial courts have broad discretion in determining the meaning of 'self-supporting' in any particular case" (*In re Marriage of*

*Shaughnessy* (2006) 139 Cal.App.4th 1225, 1247), the existence of a *Gavron* warning is only one factor the family court is to consider in determining whether the supported party made reasonable efforts to become self-supporting. (See § 4320, subd. (*l*) [included among the *many* facts the family court must consider in ordering spousal support is "[t]he goal that the supported party shall be self-supporting within a reasonable period of time"].) Indeed, the preprinted notice in the 2011 judgment on which Robert relies is expressly so limited: "The failure to make reasonable good faith efforts *may be one of the factors considered by the court* as a basis for modifying or terminating spousal or partner support." (*Shaughnessy*, at p. 1248, italics added.)

II. *Step-Down Provision in Judgment of Dissolution*

Robert contends the court erroneously used "the marital standard of living in assessing Sonia's current needs and income, when the parties stipulated, in the judgment, to a stepdown of support over time, based on an implied reduction of need and/or expectation of increased capacity." He adds: "The *Gavron* warning coupled with the stepped-down support express the parties' intention in the judgment that Sonia would become self-supporting within a reasonable time, and that they expected she would need only $1650 in spousal support to maintain the marital standard of living as of January 1, 2016." Robert thus concludes "the court erroneously focused on [his] present financial circumstances and the marital standard of living."

Sonia contends that because Robert failed to raise the issue of the parties' "implied reasonable expectations in the trial court, he has forfeited the argument in his appeal." She adds, "if Robert desired a ruling on his theory that the parties expressed (or implied) their intent that Sonia could support herself with just $1,650.00 per month in spousal support, he had

13

ample opportunity to request that ruling from the trial court. Yet this theory was never mentioned in the proceedings below."

Robert's appellate claim that the court erred by considering his present financial condition and the marital standard of living conflicts with his stipulation in the trial court that the judgment of dissolution is modifiable and his concomitant request for a termination of his spousal support obligation. As stated, in exercising its discretion, the trial court was obligated to consider the section 4320 factors, just as when making the initial support order (*In re Marriage of Swain, supra,* 21 Cal.App.5th at p. 836), including the marital standard of living and the obligations, assets, and separate properties of each party. As the court did so, we find no abuse of discretion.

Robert relies on an inapposite case. (*People v. Aninger* (1990) 220 Cal.App.3d 230, 240-241, superseded by statute on another point as indicated in *In re Marriage of O'Connor* (1997) 59 Cal.App.4th 877, 882-883.) In *Aninger*, the appellate court gave effect to the parties' marital settlement agreement, and concluded it provided no basis for a finding of changed circumstances to justify a modification of spousal support. It reversed the trial court, which had ruled otherwise: "In the case before us, the trial court ignored the threshold question of whether there had been a change in circumstances and proceeded to remake the support order according to its own ideas of what was fair and reasonable. 'When a court remakes a bargain at the request of one party for no other reason than that party's later dissatisfaction with the agreement, a court not only diminishes the bargaining process itself, but strays from the judicial restraint essential to a rational judicial process.' " (*Aninger, supra*, at p. 242.) By contrast, here, the

14

parties stipulated that their spousal support order was modifiable, and addressed all relevant section 4320 factors in the contested trial.

## DISPOSITION

The postjudgment order is affirmed.  Sonia is awarded her costs on appeal.

O'ROURKE, Acting P. J.

WE CONCUR:


BUCHANAN, J.


RUBIN, J.