Filed 5/20/26  Marriage of Lobbin CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of KARLY K. LOBBIN and STEPHEN M. LOBBIN. | |
| KARLY K. LOBBIN, | D086627 |
| Appellant, | (Super. Ct. No. 23FL006654C) |
| v. | |
| STEPHEN M. LOBBIN, | |
| Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Rebecca F. Zipp, Judge.  Affirmed.

Claery & Hammond, Lance R. Cleary, Frederick M. Medill and Kai W. Lucid for Appellant.

No appearance for Respondent.

INTRODUCTION

Karly Lobbin appeals from an order of the trial court denying Stephen Lobbin's[1] request to modify his spousal support obligation. Specifically, although the court denied Stephen's request, Karly objects to the order on the ground the court acted on its own initiative and without prior notice to give her an admonition, known as a *Gavron* warning,[2] that she has a duty to become self-supporting within a reasonable amount of time. Karly also complains the court denied her request for attorney fees under Family Code[3] section 2030 without making the express findings necessary to support its denial. Finding no merit in these contentions, we affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Karly and Stephen were married in early 2010 and separated 13 years later. The pair have two children who were aged 14 and 11 at the time of the proceedings underlying this appeal.

The parties entered into a marital settlement agreement (MSA), and it was reduced to a judgment in November 2024. According to the papers Stephen submitted in connection with the proceeding at issue in this appeal,

---

[1]    Because the parties share a last name, for clarity we will refer to them by their first names.

[2]    A *Gavron* warning is a formal advisement given by the court to a supported spouse, notifying them of their statutory duty to make reasonable efforts to become self-supporting within a reasonable period; this advisement serves as a warning that failure to do so may be a basis for the court to decrease or terminate spousal support in the future. (See *In re Marriage of Gavron* (1988) 203 Cal.App.3d 705 (*Gavron*).)

[3]    Statutory references are to the Family Code.

the judgment requires Stephen to pay Karly $15,000 per month in spousal support.[4]

On March 3, 2025, approximately four months after judgment was entered, Stephen filed a request for order (RFO) seeking to modify his spousal support obligation. He also requested that Karly be ordered to pay some of his attorney fees, which he claimed arose as a result of him spending his "own time preparing for and defending [himself]" in connection with various dissolution-related proceedings.[5] According to Stephen, his income is variable, and since agreeing to the terms of the MSA, he had become unable to pay the obligation set out in that document. He also asserted the children's ages meant they were "independent enough to allow both parties to work full time." The court set the hearing on Stephen's RFO for June 17, 2025.

In response to Stephen's RFO, Karly sought recovery of her own attorney fees under section 2030.

At the hearing on Stephen's request to modify spousal support, the trial court concluded Stephen failed to demonstrate a change in material circumstances to support his request for a modification of the support order.

During the hearing, however, the court issued Karly a *Gavron* warning, remarking that "there is an obligation for both parties to be self-supporting, and to support their children, more importantly." The court noted that Karly "is educated" and indicated that because of the children's ages, there were many types of care that Karly could obtain for them that would allow her to

---

[4] The judgment is not part of the record on appeal.

[5] Stephen stated in his declaration he is a "30-year litigation attorney" with his own practice.

work in a professional capacity.[6] The court then specifically warned Karly she would need to "become self-sufficient, or as self-sufficient as possible within a reasonable period of time." The court would not expect her to do this within "five months from divorce," but, instead, a reasonable period of time would likely be "a couple of years, given [Karly's] education and the age of the children."

The court then denied Stephen's request for attorney fees, noting he was self-represented and therefore had incurred no attorney fees. In addition, the court determined that even if Stephen had incurred attorney fees, Karly had no ability to contribute to paying them and did not have sufficient assets to pay for both parties' attorney fees and costs.

The court also denied Karly's request for attorney fees and costs. The court acknowledged that while there initially appeared to be "a disparity in access to funds," once the court considered the "significant spousal and child support obligations" Stephen had undertaken, no disparity in income or access to funds remained. The court further found that Stephen did not have the financial ability to pay for Karly's counsel at that time.

Karly now appeals the court's order. Stephen has not appeared in this appellate matter.

---

[6] Karly's documents submitted in connection with Stephen's RFO indicated she had completed law school and was licensed as a real estate agent.

4

II.

DISCUSSION

A.    *The Court Did Not Err in Issuing Karly a* Gavron *Warning*

Karly complains the trial court should not have issued her a *Gavron* warning.  She first asserts the court "exceeded its authority by adding a *Gavron* warning to the spousal support order when no such warning was included in the parties' stipulated judgment."  She claims she specifically negotiated to exclude a *Gavron* warning from the MSA, and the court "cannot unilaterally add provisions" to the terms of a contract the parties negotiated.  Second, Karly argues Stephen presented no evidence to support the giving of a *Gavron* admonition.  Finally, Karly suggests that because the court issued the *Gavron* warning without any specific request from Stephen, the court failed to provide her adequate "notice and an opportunity to respond," which, she suggests, is a due process violation.  Karly's arguments are without merit.

In *Gavron*, the court explained a supported spouse's failure to become self-supporting could, in an appropriate case, warrant modification of a support order.  Nonetheless, "[i]nherent in the concept that the supported spouse's failure to at least make good-faith efforts to become self-sufficient can constitute a change in circumstances which could warrant a modification in spousal support is the premise that the supported spouse be made aware of the obligation to become self-supporting."  (*Gavron, supra*, 203 Cal.App.3d at p. 712.)  In the absence of a "reasonable advance warning that after an appropriate period of time the supported spouse was expected to become self-sufficient or face onerous legal and financial consequences," the failure of the supported spouse to become self-supporting cannot be a "change in circumstance[]" supporting a modification.  (*Ibid*.)

5

"In 1996 . . . the Legislature codified the *Gavron* warning in Family Code section 4330, subdivision (b) first making it mandatory then later discretionary." (*In re Marriage of Schmir* (2005) 134 Cal.App.4th 43, 55–56, fns. omitted.) This provision of the statute now reads: "When making an order for spousal support, the court may advise the recipient of support that the recipient should make reasonable efforts to assist in providing for their support needs, taking into account the particular circumstances considered by the court pursuant to Section 4320, unless, in the case of a marriage of long duration as provided for in Section 4336, the court decides this warning is inadvisable." (§ 4330, subd. (b).)

As an initial matter, we conclude Karly has forfeited her challenge to the issuance of the *Gavron* warning on the ground the court altered the "material" terms of the MSA by doing so. Karly has failed to include the judgment that incorporates the MSA in the record on appeal. She also has not provided a separate copy of the MSA itself. "It is the burden of the party challenging a judgment [or order] on appeal to provide an adequate record to assess error." (*Nielsen v. Gibson* (2009) 178 Cal.App.4th 318, 324.) " '[I]f the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed.' " (*Gee v. American Realty & Construction, Inc.* (2002) 99 Cal.App.4th 1412, 1416.) Karly's claim that the court altered the terms of the MSA by giving her a *Gavron* warning cannot be assessed because this court does not have the MSA before it.

Further, to the extent Karly argues there was insufficient evidence to support the giving of a *Gavron* warning in this case, the argument fails. It is the general policy of California that parties in dissolution cases become self-supporting within a reasonable period of time. (§ 4320, subd. (*l*) [in assessing whether and the extent to which to order spousal support, the court should

6

consider, among other things, "[t]he goal that the supported party shall be self-supporting within a reasonable period of time"].)  Thus, the court has great discretion to determine whether, and if so, when, to give a party a *Gavron* warning.  The statute does not require any particular evidentiary standard be met before the warning may be given, and Karly cites no legal authority supporting her contention that the court can give a *Gavron* warning only if "evidence" is presented to the court to support it.  And even if some evidence were necessary to support the giving of a *Gavron* warning, in this case, the court considered the ages of the children, as well as Karly's significant educational background, including her law degree, as factors weighing in favor of giving her a *Gavron* warning.  These circumstances support the court's determination that Karly should be given a *Gavron* warning that she has a duty to become self-supporting within a reasonable period, which the court suggested would be a few years after the warning.

Finally, to the extent Karly contends the trial court erred in giving her a *Gavron* warning because Stephen did not request one in his RFO and she therefore did not have notice or an opportunity to respond before the decision to give her the warning, this argument is also without merit.  There is nothing in section 4330 requiring that a party request the giving of a *Gavron* warning before the court can give it, and Karly cites no case authority to suggest a request from a party is needed.  In addition, although Karly contends the giving of the *Gavron* warning in this situation somehow violated procedural due process, as *Gavron* itself makes clear, the warning the court gave Karly is designed to *effectuate* the receiving party's procedural due process rights by providing advance notice before the court *modifies or ends spousal support*.

In addition, the form Karly used to respond to Stephen's RFO includes a specific notice regarding the state's goal that parties become self-supporting, and indicated she might be issued a *Gavron* warning. In that form, the following notice appeared: "When ordering spousal or domestic partner support in a judgment, the court may advise (warn) the party asking for support[7] to make reasonable efforts to become self-supporting within a reasonable period of time, considering all the factors in Family Code section 4320. The court may decide that this warning (often called a '*Gavron*' warning) is not appropriate if the case involves a marriage or domestic partnership of long duration (about 10 years or longer). Generally, failure to become self-supporting after the court gives the warning can result in an order to reduce the amount of the support award." (Italics added.) Karly stated in this same document that while she "is not self-supporting" currently, she was requesting "at least ten years to get the children off to college and her career started before there is any change in support." Thus, contrary to Karly's position on appeal, she *was* provided notice the court might issue a *Gavron* warning, and she appears to have understood why the *Gavron* warning would issue and its relevance to her situation.

The court therefore did not err or violate Karly's due process rights by exercising its discretion under section 4330 to give her a warning that she has a duty to become self-supporting within a reasonable period of time.

B.      *The Trial Court Did Not Err in Denying Karly's Request for Fees*

Karly contends the trial court failed to make the findings required by section 2030 when it denied her request for attorney fees.

---

7      Karly acknowledged she was the party "asking for support" due to her objection to Stephen's request to modify the spousal support in the judgment.

8

Section 2030 requires the trial court to ensure that each party in a dissolution proceeding has access to legal representation "by ordering, if necessary based on the income and needs assessments, one party . . . to pay to the other party, or to the other party's attorney, whatever amount is reasonably necessary for attorney's fees and for the cost of maintaining or defending the proceeding during the pendency of the proceeding." (§ 2030, subd. (a)(1).) When a party requests fees under section 2030, the trial court must make three express findings in ruling on the request: "[1] whether an award of attorney's fees and costs . . . is appropriate, [2] whether there is a disparity in access to funds to retain counsel, and [3] whether one party is able to pay for legal representation of both parties." (§ 2030, subd. (a)(2); *In re Marriage of Morton* (2018) 27 Cal.App.5th 1025, 1050 (*Morton*).) The court's express findings may be made "either in writing or orally on the record." (*Morton*, at p. 1050.) "The purpose of section 2030 is to ensure parity. 'The idea is that both sides should have the opportunity to retain counsel, not just (as is usually the case) only the party with greater financial strength.' [Citation.]" (*In re Marriage of Cryer* (2011) 198 Cal.App.4th 1039, 1056 (*Cryer*).)

We review a trial court's decision not to award attorney's fees under section 2030 for abuse of discretion. (*In re Marriage of Nakamoto & Hsu* (2022) 79 Cal.App.5th 457, 469.) We view favorably all evidence in support of the order and uphold findings of fact that are supported by substantial evidence. (*In re Marriage of Schleich* (2017) 8 Cal.App.5th 267, 295.) We also consider whether the court followed established legal principles, as a failure to do so is an abuse of discretion. (See *Morton, supra*, 27 Cal.App.5th at p. 1039.) Nevertheless, our review begins with the presumption that the trial court's order is correct, and the appellant has the burden to affirmatively

9

demonstrate reversible error. (*Tanguilig v. Valdez* (2019) 36 Cal.App.5th 514, 520.)

According to Karly, the trial court abused its discretion by failing to make the three express findings required by section 2030. She contends the court "only made one of the three findings required by law," and failed to make findings on the first and third prongs set out in the statute. We disagree.

Karly cites only the formal findings and order after hearing for her contention that the court made a finding only with respect to the question of whether there was a disparity in the parties' access to funds to pay for counsel. She fails to acknowledge the court made oral findings of fact on the record at the hearing. The transcript from the hearing demonstrates the court said the following in connection with Karly's request for fees: "Regarding [Karly's] request for fees, that[, like Stephen's request,] is also denied. While there may be a disparity in access to funds[ ] without considering the significant spousal and child support obligations that [Stephen] has undertaken, when the Court considers those obligations, there is no longer a disparity in income and access to funds. And I do not find that [Stephen] has the financial ability to pay for [Karly's] counsel at this time." The court's statements touch on all three factors set out in section 2030, subdivision (a)(2), in that they reflect the court's determinations that an award of attorney fees and costs is not appropriate, there is no true disparity in access to funds to retain counsel between the parties given Stephen's support obligations, and neither party is able to pay for both parties' legal fees. These statements, made orally on the record, are sufficient to establish the court met the requirements of section 2030. (See *Morton, supra,*

27 Cal.App.5th at p. 1050 [oral statements made on the record are sufficient under section 2030].)

To the extent one could challenge the court's adherence to the findings required under section 2030 because it failed to use the word "appropriate" as mentioned in the first prong of subdivision (a)(2) of the statute, we conclude any presumed error on this point is harmless. (See *Morton, supra*, 27 Cal.App.5th at p. 1051 [appellant must establish prejudice resulted from court's failure to make express findings on the three questions set out in section 2030].) Prejudice in this context is established by showing there is " 'a reasonable probability that in the absence of the error, a result more favorable to the appealing party would have been reached.' " (*Morton*, at p. 1051.) The record reflects the court reviewed the evidence before it in considering each party's ability to access legal representation and weighing whether there was sufficient parity of access to financial resources between them, and in considering whether the reapportioning of fees between the parties was appropriate. (See *Cryer, supra*, 198 Cal.App.4th at p. 1056.) The court noted that Stephen's support obligations to Karly equalized the parties' seemingly disparate income, making Karly better able to pay for her own attorney fees while reducing Stephen's ability to do the same. Similarly, the court noted neither party was able to pay for both his or her own fees and the other party's fees. On this record it is clear the court would have denied Karly's request for fees even in the absence of any presumed error with respect to the first prong of subdivision (a)(2).

11

III.

DISPOSITION

The order of the trial court is affirmed.  Stephen is entitled to costs on appeal.[8]


                                                            KELETY, J.

WE CONCUR:


McCONNELL, P. J.


RUBIN, J.

---

[8]     Stephen has not appeared on appeal and therefore may not have incurred such costs.