Filed 1/6/17

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| In re the Marriage of COLLEEN and BRUCE Y. MCLAIN. | |
| COLLEEN MCLAIN,<br><br>        Respondent,<br><br>v.<br><br>BRUCE Y. MCLAIN,<br><br>        Appellant. | E062884<br><br>(Super.Ct.No. FAMVS1300668)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Khymberli S.Y. Apaloo, Judge.  Affirmed.

Thompson & Thompson and Jeffrey S. Valladolid for Appellant.

Zumbrunn Law Corporation, Gregory L. Zumbrunn and Richard D. Malone for Respondent.

The family court entered a judgment of dissolution for the marriage of respondent Colleen McLain (Wife) and appellant Bruce Y. McLain (Husband).  The family court (1) ordered Husband to pay Wife $4,000 per month in spousal support;

(2) awarded Wife $5,500 in attorney's fees; and (3) denied Husband's request for reimbursement of alleged separate property contributions used to construct a residence (Fam. Code, § 2640).[1]

Husband raises three issues on appeal. First, Husband contends the family court erred in awarding spousal support by concluding that Wife has a right to retire. Second, Husband contends the family court erred in awarding attorney's fees to Wife. Third, Husband asserts he sufficiently traced his separate property and therefore the family court erred by denying his request for reimbursement of his separate property. We affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY

Husband and Wife married on October 13, 2001. They separated on March 14, 2014. They did not share any children. In May 2014, Husband was 68 years old and Wife was 66 years old. Husband had worked as a firefighter. Wife had worked as a personal assistant and transaction coordinator for a real estate agent and broker. Wife was a licensed real estate agent, but never used her license.

Both Husband and Wife retired in 2005. At that time, Husband was ready to retire and urged Wife to retire as well so they could travel and she could spend time with her grandchildren. In 2005, Wife began training her daughter to take over Wife's job in the real estate office. Through 2011 or 2012, as payment for a loan, Wife continued working as a personal assistant two to five hours per week for the real estate

---

[1] All subsequent statutory references will be to the Family Code unless otherwise indicated.

2

agent/broker. However, Wife's primary focus since 2005 had been cooking, cleaning, laundry, and household chores. Wife was in good health. Wife had a monthly social security income of $746 less $198 for MediCare payments. Husband's retirement income was approximately $10,000 per month.

After retiring in 2005, Husband was busy working with a contractor on building a house for Husband and Wife in Big Bear City (the Big Bear house). There was not a mortgage on the house; it was built as cash was available from 2006 through 2011. The Big Bear house was approximately 3,900 square feet and had a stipulated value of $775,000. The lot on which the Big Bear house was built was purchased in 2003.

Wife owned a residence in Fawnskin, which she had owned since 1987. During Husband and Wife's marriage, the loan on the Fawnskin property was refinanced three times. The first refinance allowed approximately $95,000 to be taken out. The second refinance left approximately $100,000 in cash. The third refinance generated an extra $130,000 in cash. The cash from the refinancing, at least from the second and third refinancing, went into a joint account and was used for construction of the Big Bear house. During the construction period Husband and Wife always had joint accounts. The Fawnskin house was ultimately sold in a short sale.

Husband owned a residence in San Dimas, which he acquired in 1974 (the San Dimas house). In 2004, the San Dimas house was sold. Wife's name was added to the title of the San Dimas house at the time of the sale for title insurance purposes. Money from the sale of the San Dimas house went into a joint account and a portion of it was used to construct the Big Bear house. Husband had a "401-A" account and an IRA that

3

he also used to pay for the construction.  The cost of the Big Bear house was approximately $507,700.

The family court issued a ruling on submitted matter.  In the written ruling, the family court wrote, in relevant part, "In this matter, the Court finds that [Wife] needs spousal support to help her meet her financial needs as well as to put her as close as possible to the marital standard of living.  This Court does not believe that it is appropriate to impute income to [Wife].  No evidence was presented which would support an income to her, or that there were jobs available for which she qualified and could earn an income.  Furthermore, she is retired, just as [Husband] is retired, with both of them beyond retirement age.  The parties have a right to retire, and they did that. [Husband] knew [Wife] substantially retired in 2006, a year after he did, and that she fully retired in 2011.  Their retirement has been part of the marital standard of living since well before the dissolution of marriage was filed, and [Wife] is not now going to be thrown out of retirement.  For these same reasons, this Court will also not be issuing a *Gavron* warning to [Wife]."  The court awarded Wife $4,000 per month in spousal support and $5,500 in attorney's fees.

## DISCUSSION

### A. RETIREMENT

#### 1. *CONTENTION*

Husband contends the family court erred by concluding Wife has the same right to retire as Husband.  Husband asserts Wife, as the supported spouse, has an obligation to become self-supporting and therefore does not have a right to retire.

4

## 2. *BACKGROUND LAW*

In *In re Marriage of Reynolds* (1998) 63 Cal.App.4th 1373, this court discussed the issue of whether the supporting spouse (as opposed to the supported spouse) has a right to retire when the retirement could lead to a lower income. This court wrote, "Furthermore, we hold that no one may be compelled to work after the usual retirement age of 65 in order to pay the same level of spousal support as when he was employed." (*Id*. at p. 1378.)

Section 4320 lists a variety of factors the family court should consider when ordering spousal support. Two of the factors are "[t]he age and health of the parties." (§ 4320, subd. (h).) The statute also provides the family court should consider "[t]he goal that the supported party shall be self-supporting within a reasonable period of time . . . . However, nothing in this section is intended to limit the court's discretion to order support for a greater or lesser length of time, based on any of the other factors listed in this section, Section 4336, and the circumstances of the parties." (§ 4320, subd. (*l*).) The family court may also take into account "[a]ny other factors the court determines are just and equitable." (§ 4320, subd. (n).)

## 3. *INTERPRETING THE "AGE" FACTOR*

The conflict in this case arises between the portion of the statute that authorizes the family court to consider "age," which could be interpreted as retirement age, and the portion of the statute that sets forth the goal of the supported party becoming self-supporting. In other words, can the family court determine that a supported spouse

5

being of retirement age outweighs the "self-supporting" factor. In order to determine this, we need to understand what is meant by the "age" factor in the statute.

When interpreting a statute, we begin with the words in the statute, applying their usual and ordinary meaning and construing them in context. If the plain meaning of the statutory text is ambiguous, then we may turn to rules of construction or legislative history. (*Mejia v. Reed* (2003) 31 Cal.4th 657, 663.)

The plain language of the statute reflects the family court is to consider "[t]he age and health of the parties" when ordering spousal support. (§ 4320, subd. (h).) For the age factor to have meaning, the family court would need to consider whether the parties are young and therefore presumably more likely to work and earn a living wage, or whether the parties are older and perhaps no longer working. In other words, the plain language of the statute reflects age is a factor in determining spousal support. The point of considering age when determining spousal support, in part, is that there comes an age when people commonly stop working.

The age of 65 is the customary retirement age. (*In re Marriage of Morrison* (1978) 20 Cal.3d 437, 454; *In re Marriage of Reynolds*, *supra*, 63 Cal.App.4th at p. 1378; *In re Marriage of Shimkus* (2016) 244 Cal.App.4th 1262, 1277.) Thus, given the plain language of the statute, a relevant consideration for a court when ordering spousal support is the age of the parties, and the point of that factor is to determine if the parties are younger or older, and if the parties are older, whether they have reached the customary retirement age of 65.

### 4. *WEIGHING THE FACTORS*

"An award of spousal support is a determination to be made by the trial court in each case before it, based upon the facts and equities of that case, after weighing each of the circumstances and applicable statutory guidelines. [Citation.] In making its spousal support order, the trial court possesses broad discretion so as to fairly exercise the weighing process contemplated by section 4320, with the goal of accomplishing substantial justice for the parties in the case before it. 'The issue of spousal support, including its purpose, is one which is truly personal to the parties.' [Citation.] In awarding spousal support, the court must consider the mandatory guidelines of section 4320. Once the court does so, the ultimate decision as to amount and duration of spousal support rests within its broad discretion and will not be reversed on appeal absent an abuse of that discretion. [Citation.] 'Because trial courts have such broad discretion, appellate courts must act with cautious judicial restraint in reviewing these orders.'" (*In re Marriage of Kerr* (1999) 77 Cal.App.4th 87, 93, fn. omitted.)

Under section 4320, the family court is to consider: (1) "[t]he extent to which the earning capacity of each party is sufficient to maintain the standard of living established during the marriage" (§ 4320, subd. (a)); and (2) "[t]he needs of each party based on the standard of living established during the marriage" (§ 4320, subd. (d)). The marital standard of living is "a general description of the station in life the parties had achieved by the date of separation," rather than a "mathematical standard." (*In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 491.)

In the family court's ruling on submitted matter,[2] it concluded that Wife needed spousal support to put her near the marital standard of living. Thus, the court was properly considering the marital standard of living as well as Wife's needs. (§ 4320, subds. (a) & (d).)

Next, the court determined that it would not impute income to Wife because (1) there was no evidence she had an income; (2) there was no evidence of jobs available to Wife; (3) Wife was retired; and (4) Wife had a right to remain retired. The court's consideration of Wife being retired reflects the court taking into account "the station in life the parties had achieved," i.e., that they were both retired. (*In re Marriage of Smith*, *supra*, 225 Cal.App.3d at p. 491; § 4320, subds. (a) & (d)). The court's comment that Wife had a right to remain retired reflects consideration of both the parties' "station of life" as well as Wife's age because Wife was beyond the customary retirement age of 65. The family court's reasoning reflects it was following the requirements of section 4320, taking into account the marital "standard of living" as well as the ages of the parties. (§ 4320, subds. (a), (d) & (h).) The family court's

---

[2] Generally, the absence of a statement of decision means that we must conclude the lower court made all findings necessary to support its order under any theory argued. But this is "merely a corollary of the general rule that a judgment is presumed to be correct and must be upheld in the absence of an affirmative showing of error. This presumption applies only on a silent record. [Citation.] In contrast, 'When the record clearly demonstrates what the [family] court did, we will not presume it did something different.'" (*Border Business Park, Inc. v. City of San Diego* (2006) 142 Cal.App.4th 1538, 1550.) The family court did not issue a statement of decision, but it did issue a detailed ruling on submitted matter setting forth its reasoning.

8

comments concerning Wife's lack of income and the lack of available jobs is related to Wife being retired and thus is a proper consideration. (§ 4320, subds. (a), (d) & (h).)

The court also took into account "[t]he goal that the supported party shall be self-supporting within a reasonable period of time." (§ 4320, subd. (*l*).) The court explained, "Their retirement has been part of the marital standard of living since well before the dissolution of marriage was filed, and [Wife] is not now going to be thrown out of retirement. For these same reasons, this Court will also not be issuing a *Gavron* warning to [Wife]." "[A] '*Gavron* warning' is a fair warning to the supported spouse [that] he or she is expected to become self-supporting." (*In re Marriage of Schmir* (2005) 134 Cal.App.4th 43, 55.)

The court's reasoning reflects it weighed the goal of the supported party becoming self-supporting against the marital standard of living, and reconciled that the goal of self-support would conflict with maintaining the marital standard of living because the marital standard of living included being retired. The court's reasoning shows it considered the relevant factors. Further, the court's reasoning is tied to the evidence, which reflects the parties retired in 2005, and in 2014 Wife was 66 years old. Accordingly, the family court did not abuse its discretion because its reasoning directly relates to the evidence and the factors it is legally required to consider. The family court's decision is within the law and within the bounds of reason. (See *In re Marriage of Weinstein* (1991) 4 Cal.App.4th 555, 564 [abuse of discretion occurs when the decision exceeds the bounds of reason].) Accordingly, we conclude the family court did not err.

9

Husband contends the family court erred by not requiring Wife to make an effort to become self-supporting because the court has effectively ordered Husband to pay Wife spousal support for the rest of her life. Husband's argument focuses on the evidence that Wife has the ability to work. Husband is asking this court to reweigh the factors and afford greater weight to Wife's ability to work than to Wife's age. As explained *ante*, the family court's weighing of the factors was reasonable and within the bounds of the law. We cannot reweigh the factors to accord greater weight to the supported spouse's ability to work. (See *In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 304 [the trial court has discretion to determine the appropriate weight to accord each factor].)

Husband contends the family court erred by failing to consider the factor set forth in section 4320, subdivision (a)—"[t]he extent to which the earning capacity of each party is sufficient to maintain the standard of living established during the marriage." Husband asserts the family court failed to include in its weighing process the length of time it would take for Wife to become self-supporting. Contrary to Husband's position, the family court did consider this factor. The family court explained that Wife did not have an income, that retirement was part of the marital standard of living, that Wife was beyond retirement age, that Wife could not be expected to start working again, and that the Court did not expect Wife to become self-supporting. The family court considered Wife's ability to work as shown by the court's discussion of Wife's retirement status. The family court's reasoning shows it accorded greater weight to the supported spouse's age than to the supported spouse's ability to

10

work.  Thus, we are not persuaded that the family court missed a factor in the weighing process.

Next, Husband contends the family court erred because it did not consider "the goal that the supported party shall be self-supporting."  (§ 4320, subd. (*l*).)  The family court did consider this goal as shown by the court's decision that it would not issue a *Gavron* warning.  "[A] '*Gavron* warning' is a fair warning to the supported spouse [that] he or she is expected to become self-supporting."  (*In re Marriage of Schmir*, *supra*, 134 Cal.App.4th at p. 55.)  The family court explained it was not issuing a *Gavron* warning because Wife was retired and past the age of retirement.  The court's decision shows it considered the goal of the supported party becoming self-supporting, but accorded greater weight to Wife's age.  Thus, the court did not miss a required factor; rather, it afforded greater weight to the age factor.  (See generally *In re Marriage of Kochan* (2011) 193 Cal.App.4th 420, 429-430 [the family court should not enter an order that effectively requires a spouse to forego retirement].)

B.     ATTORNEY'S FEES

Husband contends the family court erred by awarding Wife need-based attorney's fees because the court incorrectly relied on the premise that Wife has a right to retire.

In the family court's ruling on submitted matter, when the family court awarded attorney's fees to Wife it did so "[b]ased on all of the foregoing factors set forth above, as well as the disparity in the parties' incomes."  The "spousal support" section is above the "attorney's fees" section in the family court's ruling on submitted matter, therefore,

presumably the family court was referencing its spousal support analysis in awarding attorney's fees.

"Under sections 2030 and 2032, a family court may award attorney fees and costs 'between the parties based on their relative circumstances in order to ensure parity of legal representation in the action.' [Citation.] The parties' circumstances include assets, debts and earning ability of both parties, ability to pay, duration of the marriage, and the age and health of the parties." (*In re Marriage of Winternitz* (2015) 235 Cal.App.4th 644, 657.)

As in spousal support, the age of the parties is a relevant factor in awarding attorney's fees. The purpose of age being a factor is that there comes an age, such as the customary retirement age of 65, when a party may no longer work. In the instant case, the family court found, based on the evidence, that Wife was retired and that retirement was part of the marital standard of living. The family court relied on proper factors when awarding attorney's fees. Accordingly, we conclude the family court did not err.

C.    SEPARATE PROPERTY

The family court concluded Husband failed to sufficiently trace his separate property alleged to have been used to pay for the construction of the Big Bear house because, while there was testimony about the money used to construct the house, no documents were submitted in support of the tracing of funds. Husband contends the trial court erred because the statute does not require tracing be accomplished with documents.

12

Section 2640, subdivision (b), provides, "In the division of the community estate under this division, unless a party has made a written waiver of the right to reimbursement or has signed a writing that has the effect of a waiver, the party shall be reimbursed for the party's contributions to the acquisition of property of the community property estate to the extent the party traces the contributions to a separate property source. The amount reimbursed shall be without interest or adjustment for change in monetary values and may not exceed the net value of the property at the time of the division."

The term "tracing" is not defined in the statute. (§ 2640.) However, in 1966 our Supreme Court wrote the following: "Property acquired by purchase during a marriage is presumed to be community property, and the burden is on the spouse asserting its separate character to overcome the presumption. [Citations.] The presumption applies when a husband purchases property during the marriage with funds from an undisclosed or disputed source, such as an account or fund in which he has commingled his separate funds with community funds. [Citation.] He may trace the source of the property to his separate funds and overcome the presumption with evidence that community expenses exceeded community income at the time of acquisition. If he proves that at that time all community income was exhausted by family expenses, he establishes that the property was purchased with separate funds." (*See v. See* (1966) 64 Cal.2d 778, 783.)

The Supreme Court went on to explain, "The husband may protect his separate property by not commingling community and separate assets and income. Once he commingles, he assumes the burden of keeping records adequate to establish the

13

balance of community income and expenditures at the time an asset is acquired with commingled property." (*See v. See*, *supra*, 64 Cal.2d at p. 784.)

We understand the Supreme Court's opinion to mean that if separate property is commingled with community property in a bank account, then the owner of the separate property has the burden of keeping records establishing community funds were exhausted when the purchase was made. As a lower court, we cannot contradict the opinion of the Supreme Court. (*Auto Equity Sales, Inc. v. Superior Court of Santa Clara County* (1962) 57 Cal.2d 450, 455-456.) Therefore, we must conclude tracing requires documentary proof because our Supreme Court has held records must be kept, and the point of keeping records is to offer them in court as evidence.

Next, Husband asserts that if documents are required for tracing, then he provided sufficient evidence. At trial, Husband provided a handwritten note that reads:

"Money from S.D. House =        $372,187

"[Money from] 401A                40,600

"My Seperate [*sic*] Prop. Total =   $412,787.00"

Husband contends the note is sufficient evidence for tracing his separate property because Wife stipulated to the admission of the note and Wife corroborated Husband's testimony that money from the sale of Husband's San Dimas house was used to pay for the construction of the Big Bear house.

We first address the stipulation theory. Wife's attorney stipulated to the admission of Husband's handwritten note. A stipulation that evidence is admissible does not equate with the concession of an issue. (See *Raphael v. Bloomfield* (2003) 113

14

Cal.App.4th 617, 626 [requiring a stipulation and concession].) For example, parties can stipulate to the admission of a toxicology report without conceding that the test subject was drunk or sober. In the instant case, Wife stipulated to the admission of the handwritten note but disputed that Husband had sufficiently traced his separate property. In sum, Wife's stipulation that Husband's handwritten note was admissible does not equate with sufficient evidence of tracing Husband's separate property.

Next, we address the corroboration theory. Wife testified that some money from the sale of Husband's San Dimas house was used to pay for the construction of the Big Bear house. However, Wife did not specify how much of the money was used to pay for the construction. When asked if the money from the sale of the San Dimas house went directly into building the Big Bear house, Wife responded, "Eventually, some of it, maybe." When again asked if the money from the sale of the San Dimas house was used to pay for constructing the Big Bear house, Wife answered, "[S]ome of it did."

Wife's testimony reflects some money from the sale of Husband's San Dimas house was used to construct the Big Bear house. However, Wife did not confirm that a particular amount of money from the sale was used to pay for the construction. As a result, Wife's testimony does not provide substantial evidence for tracing Husband's separate property because it is unclear what amount of money from the sale of the San Dimas house was used to pay for construction. (See *In re Marriage of Cochran* (2001) 87 Cal.App.4th 1050, 1057-1058 [tracing ruling is reviewed for substantial evidence].)

Further, the evidence reflects the construction of the Big Bear house cost approximately $507,700. Two refinances of Wife's Fawnskin house produced

approximately $230,000 in cash. Husband is asserting he paid $412,787 toward the construction of the Big Bear house. Husband also had a monthly income of approximately $10,000 per month. Disregarding the monthly income, the money from the two refinances and Husband's alleged separate property totals $642,787, which was $135,087 more than was needed to construct the Big Bear house. If the 2003 purchase price of $110,695 for the lot on which the Big Bear House was built was included, then there was still $24,392 more than was needed. Given that more money was available than was needed, it cannot be determined what amount of Husband's separate property went toward the construction of the Big Bear house.

## DISPOSITION

The judgment is affirmed. Respondent is awarded her costs on appeal.

CERTIFIED FOR PUBLICATION

MILLER_____
                                                    J.


We concur:


McKINSTER_____
                    Acting P. J.


CODRINGTON_____
                                    J.

16