Filed 5/27/25  Marriage of Giese CA2/6
Opinion following rehearing

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re Marriage of TORREY KAHANA and SOREN GIESE. | 2d Civil No. B321019 (Super. Ct. No. D387294) (Ventura County) |
| TORREY KAHANA GIESE, Appellant, v. SOREN GIESE, Respondent. | OPINION ON REHEARING |

Torrey Kahana Giese (Wife) appeals from the judgment dissolving her 20-year marriage to Soren Giese (Husband).  She contends the trial court erred in calculating temporary spousal support arrearages for 2018 and 2019, setting permanent spousal support, denying recovery of attorney fees and costs she incurred in pursuing two writ petitions and a petition for contempt, denying recovery of certain

expert witness fees, denying her request for security for spousal support, modifying child support and failing to rule on retroactive base support under the 2018 temporary order.

We conclude the trial court erred in calculating temporary spousal support arrearages and that the judgment requires clarification with regard to the permanent spousal support award of an *Ostler-Smith*[1] (see *post* at pp. 15-17) percentage of Husband's annual bonus compensation. We further conclude the trial court erred when it denied recovery of attorney's fees and costs incurred on appellant's successful petition for writ of mandate. We will remand the matter for recalculation of temporary spousal support arrearages, for clarification of the *Ostler-Smith* component of spousal support and for an award of attorney fees and costs associated with the writ petition. In all other respects, we affirm.

*Facts and Procedural History*

The parties were married in 1997 and separated in 2018. They had three children, two of whom were minors, aged 16 and 14, on the date of separation. For most of the marriage, Wife was not employed outside the home. She now holds a real estate license and works as a fitness instructor. Husband is a highly compensated executive in the pharmaceutical industry.

During the marriage, the family lived in Mexico and Russia because of Husband's employment. While living abroad, the family benefitted from many perquisites provided by

---

[1] *In re Marriage of Ostler & Smith* (1990) 223 Cal.App.3d 33, held that spousal and child support awards may include both a percentage of the supporting spouse's wages and a percentage of the income he or she receives in the form of bonuses, dividends and other types of discretionary compensation.

Husband's employer including subsidized luxury housing and private-school tuition for the children. Husband is currently employed by Amgen Italy and resides in Milan, Italy. He no longer receives the housing subsidy and other perquisites paid during his prior overseas assignments. Husband's compensation includes a salary, a discretionary annual performance-based bonus ("Global Management Incentive Program," or "GMIP") and participation in a long-term incentive program ("LTI") that includes restricted stock units ("RSUs"), dividend equivalent units (DEUs), nonqualified stock units, performance units, and other forms of stock-based compensation.

In November 2018, the trial court entered a temporary child and spousal support order. With regard to spousal support, the order provided, in part, that Husband shall pay to Wife "the sum of $4065 per month commencing [July 1, 2018] with payment prior to [December 1, 2018] stayed pending further court order . . . ."

An attachment to the order further provided, "In addition to the base amounts of temporary spousal support and child support ordered by the court in the attached dissomaster report, [Husband] shall pay to [Wife] as additional temporary spousal support and as additional child support the indicated percentages for spousal support and for child support of all separate property gross income he earns in excess of his base monthly average income (i.e., $21,514 per month wages) in the attached bonus table. [¶] [¶] Pendente lite, all separate property gross income that [Husband] earns in excess of his base monthly average income shall include all forms of income including but not limited to, the types of compensation identified in his current employment contract with Amgen, such as bonuses, raises,

3

restricted stock units, preferred stock units, stock options, extra pay for international work and deferred compensation." The order included equivalent provisions relating to offsets for Wife's gross income, real estate commissions and business expenses.

Further, the temporary support orders were "effective commencing (retroactively) July 1, 2018. [¶] The payment and calculation of retroactive support for the period July 1, 2018 to November 30, 2018, is reserved for future determination by the court upon appropriate request by either party. [¶] The characterization and division of the 2019 bonus anticipated to be paid in March 2019 is reserved for hearing by the court at a date that the court and counsel will select at the hearing on January 25, 2019."

Throughout this litigation the parties bitterly disputed issues relating to the custody, visitation and support of their minor children, especially after Husband began to work in Italy in the summer of 2019. There have been three rounds of child custody mediation with the same counselor. In September 2019, after a mediation session, the mediator recommended modifying the custody order to grant primary physical custody to Husband. The trial court followed its "normal operating procedure" and adopted the mediator's recommendation pending an evidentiary hearing. It refused Wife's request for an evidentiary hearing prior to the change in custody.

Wife filed a petition for writ of mandate challenging the decision to modify custody without an evidentiary hearing. We entered an order noting that the superior court may not consider a mediator's recommendations without first affording the parties an opportunity to question the mediator on direct and cross examination. (*McLaughlin v. Superior Court* (1983) 140

4

Cal.App.3d 473 (*McLaughlin*).) We suggested the trial court reconsider its order and allow direct and cross-examination of the mediator before deciding whether to issue a temporary order changing custody. The trial court held the hearing we suggested but limited Wife's examination of the mediator to 30 minutes. After the hearing, it entered an order adopting the recommendations and modifying temporary custody as suggested.

Wife filed a second petition for writ of mandate about six months later, after the trial court set a trial date over the objection that Wife's counsel was unavailable. We denied the petition.

Trial took place over 21 days. Both parties presented lengthy testimony from forensic accountants regarding the proper calculation of the marital standard of living and Husband's current base income and bonus compensation. Their analyses differed dramatically. Wife's expert valued the marital standard of living at $45,982 per month. Husband's concluded it was $8,784 per month. Wife requested an award of $20,000 per month in permanent spousal support. The trial court awarded her $7,500 per month.

The parties' financial experts also differed on the proper calculation of Husband's bonus compensation and whether he was in arrears or had overpaid under the temporary support order. Wife's expert concluded Husband owed Wife $90,737 plus 433 shares of Amgen stock for the years 2018 and 2019. Husband's expert concluded he had overpaid for those years and that Wife owed him $12,848. The trial court adopted the analysis of Husband's expert. Wife also requested $62,335 in retroactive base child and spousal support for 2018. The trial court found no further base support was owed.

5

The trial court ordered Husband to pay 60% of Wife's attorney fees and costs. It further ordered that, "Accounting fees shall not be included in the category of litigation costs. Each side is to bear their own costs for accountants." It also excluded recovery for fees and costs incurred on the writ petitions and an unsuccessful contempt petition filed by Wife.

*Contentions*

Wife contends the trial court erred when it found that Husband was not in arrears on payment of the *Ostler-Smith* component of temporary spousal support for 2018 and 2019, and that Wife owed Husband for overpayments. She also contends the trial court erred in setting the amount of permanent spousal support and when it denied recovery of attorney fees she incurred in litigating two petitions for writ of mandate, one contempt petition, and accounting and other expert witnesses. She further contends the trial court erred when it denied her request for security for spousal support, when it modified the temporary child support order and when it failed to rule on retroactive base child and spousal support for 2018.

*Standard of Review*

An order awarding temporary child and spousal support is reviewed for abuse of discretion. (*In re Marriage of Kerr* (1999) 77 Cal.App.4th 87, 93.) The same abuse of discretion standard applies to an order awarding permanent spousal support and to an order awarding attorney's fees and costs. (*In re Marriage of McLain* (2017) 7 Cal.App.5th 262, 269 (*McLain*); *In re Marriage of Nakamoto & Hus* (2022) 79 Cal.App.5th 457, 474 (*Nakamoto & Hsu*).) In reviewing these orders, we do not substitute our judgment for that of the trial court and instead determine only whether any judge reasonably could have made

6

such an order.  We review the trial court's legal conclusions de novo and its factual findings for substantial evidence. (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712.)

*Discussion*

Temporary Spousal Support Arrearages.  Wife contends the trial court erred when it found that Husband was not in arrears on temporary spousal support payments for either 2018 or 2019 and that, instead, she owed Husband for overpayments.

The parties separated on May 1, 2018.  In November 2018, the parties stipulated to an order for temporary spousal and child support.  This stipulated order awarded Wife both spousal and child support, calculated by reference to Husband's average base salary.  Husband was also ordered to make *Ostler-Smith* payments, calculated as a percentage of "all separate property gross income [Husband] earns in excess of his base monthly average income . . . ."  The temporary support order further provided, "Pendente lite, all separate property gross income that [Husband] earns in excess of his base monthly average income shall include all forms of income including but not limited to, the types of compensation identified in his current employment contract with Amgen, such as bonuses, raises, restricted stock units, preferred stock units, stock options, extra pay for international work and deferred compensation.  [¶] [¶]  These pendente lite support orders are effective commencing (retroactively) July 1, 2018."  The order includes equivalent provisions relating to Wife's separate property gross income.

Both parties had expert forensic accountants who testified regarding the calculation of Husband's income for purposes of temporary spousal support.  Wife's expert, Anna Leh,

7

calculated temporary support from the date of separation, in May 2018. In April 2019, Husband sent Wife a check for $47,294 with a note stating that $26,229.35 should go toward the *Ostler-Smith* obligation. Subtracting that amount from the total bonus compensation, Leh concluded Husband owed $8,096 plus interest of $1,069 for a total due of $9,165 for 2018.

Leh calculated Husband's separate property gross income for 2019 by adding together his earnings in excess of his base salary from both his U.S. employer and his Italian employer, the perquisite payments he received for living and relocation expenses and his GMIP cash bonus. This resulted in a total amount owed for 2019 of $81,572. She further concluded that Husband owed Wife 433 shares of stock attributable to stock options that vested in 2019.

Husband's expert, Lynda Schauer, on the other hand, excluded May and June 2018 because the temporary order stated that it was "effective commencing (retroactively) July 1, 2018." She also excluded Husband's RSUs and DEUs from the spousal support calculation. Schauer reached this conclusion because, in her opinion, *In re Marriage of Macilwaine* (2018) 26 Cal.App.5th 514 (*Macilwaine*), required that vested stock options be included in child support calculations but excluded from spousal support calculations. Schauer applied the entire $47,294 payment Husband made in April 2019 to his *Ostler-Smith* obligations, disregarding his written note to the contrary. Because Husband owed only $35,945 for 2018, Schauer concluded he had overpaid Wife by $11,349. With interest, the overpayment totaled $12,848.

For 2019, Schauer considered Husband's gross income from his U.S. employer, earned during the first six months of 2019, plus his *net* income from his Italian employer.

8

She also excluded the perquisite payments and other subsidies Husband received for living and relocation expenses. Schauer included Husband's RSUs and DEUs when calculating the child support owed, but excluded those amounts from the spousal support calculation. She concluded Husband overpaid by $1,281 for 2019.

The trial court "found the testimony of [Husband's] witness, Lynda Schauer, to be more credible." It adopted her analysis and found that Wife owed Husband for both 2018 and 2019 due to his overpayments.

Wife contends the trial court erred in excluding May and June 2018 from the *Ostler-Smith* calculation. We disagree. The temporary support order expressly provides that it is "effective commencing (retroactively) July 1, 2018." Wife argues this statement refers only to the base spousal and child support, and not to *Ostler-Smith* bonus support, but the order itself does not expressly make that distinction. The trial court did not err in adopting an expert opinion that was consistent with its prior order.

Wife further contends the trial court erred when it offset the 2018 *Ostler-Smith* support by her portion of vesting community stock. But the November 2018 temporary support order requires that offset. It provides, "[b]y way of offset against the additional support [Husband] pays to [Wife], [Wife] shall credit to [Husband] the indicated percentages of all separate property gross income she receives in excess of her base monthly average income . . . ." Wife's community share of stock that vested in 2018 is income in excess of her base monthly average income.

9

Nor can we agree that the trial court erred when it adopted Schauer's approach, applying Husband's entire $47,294 payment to his *Ostler-Smith* obligation and disregarding his note stating that only $26,229.35 should be applied to that obligation. The trial court factually determined that the $47,294 payment should be credited to Husband's *Ostler-Smith* obligation. Wife points to no evidence explaining how the remaining $21,064.65 should be applied if not to the *Ostler-Smith* bonus support.

Wife contends the trial court erred in determining that Husband overpaid *Ostler-Smith* support for 2019. She contends the trial court erred when it relied on Husband's net Italian income, rather than his gross income, when it excluded from the calculation certain perquisites and other benefits he received, and when it excluded from the spousal support calculation the stock options and other similar benefits that vested in 2019. With one exception, we conclude the trial court did not abuse its discretion and that its factual findings are supported by substantial evidence.

First, the trial court did not rely on Husband's net income, rather than gross income. To the contrary, the trial court explained, "On a before tax basis, [Husband] is earning 279,000 euros/year plus 8 percent put by Amgen into a retirement fund, and is eligible for a bonus of 30% of his base earnings. . . . He is also entitled to profit sharing in the form of stock options. . . . Putting all of this together and not reducing it for Italian taxes, his total before tax income for 2020 is estimated to be $360,000.00, or $30,000.00/month."

Similarly, the trial court did not ignore perquisites and other benefits Husband received in 2019. His tax documents

10

are substantial evidence that, in 2019, Husband did not receive perquisites or other subsidies that constitute additional income.

Relying on *Macilwaine, supra,* 26 Cal.App.5th 514, Husband's expert witness calculated his bonus income for purposes of child support arrearages by including income he received from stock options, RSUs and PSUs. She excluded income from those sources for purposes of spousal support arrearages because, she explained, *Macilwaine* did not involve spousal support. The trial court adopted that same analysis in its statement of decision. Wife contends the trial court erred because *Macilwaine* does not preclude its application to spousal support. In addition, Wife contends the temporary support order defines Husband's separate property gross income more broadly than the definition employed by the trial court. We agree with the latter contention.

The judgment here does not award temporary spousal support in the first instance. Instead, the question before the trial court was whether Husband was in arrears on the temporary spousal support awarded in the November 28, 2018 order. That order provides Husband "shall pay to [Wife] as additional temporary spousal support" an agreed-upon percentage "of all separate property gross income he earns in excess of his base monthly average income . . . . [¶] [¶] Pendente lite, all separate property gross income that [Husband] earns in excess of his base monthly average income shall include all forms of income including but not limited to, the types of compensation identified in his current employment contract with Amgen, such as bonuses, raises, restricted stock units, preferred stock units, stock options, extra pay for international work and deferred compensation."

11

In opining that Husband was not in arrears on temporary spousal support, Husband's expert witness excluded from her calculation of his separate property gross income any income he received from stock options, restricted stock units, preferred stock units and other similar sources. Paragraphs 6.1 and 6.2 of the judgment adopt the same reasoning, finding that Wife owes Husband for overpayment of temporary spousal support in 2018 and 2019. The narrow definition of separate property gross income employed in the judgment, however, is inconsistent with the November 28, 2018 temporary support order because that order requires inclusion of "all forms of income" in the calculation. To the extent it adopted a definition of gross income that excludes consideration of forms of income expressly described in the temporary support order, the trial court erred. (*In re Marriage of Gruen* (2011) 191 Cal.App.4th 627, 637 [temporary spousal support order operative until permanent support order is entered].) We will remand the matter to the trial court with instructions to determine whether Husband is in arrears on temporary spousal support by applying the definition of separate property gross income that is included in the November 28, 2018 order.

Permanent Spousal Support. Wife contends the trial court erred when it set her permanent spousal support at $7,500 per month. First, she contends the trial court erred because it did not make an express finding of the marital standard of living. Second, she contends the trial court erred because it did not award support in an amount that would allow her to save and invest, a significant component of the marital standard of living. Third, Wife contends the judgment is vague with regard to the award of an *Ostler-Smith* percentage of Husband's future bonus

12

compensation. Finally, she contends the trial court erred because it did not include disclosure and security requirements for the bonus support obligation and because the judgment allows Husband to delay paying the bonus support until January 31 of the following year.

Family Code section 4320[2] provides that, in ordering spousal support, the trial court "shall consider" all of the circumstances enumerated in the statute. (*Ibid*.) The first circumstance, the marital standard of living, "is relevant as a reference point against which the other statutory factors are to be weighed." (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 303 (*Cheriton*).) Marital standard of living has no strict statutory definition but can be described as a measure of "'reasonable needs commensurate with the parties' general station in life. . . .'" (*In re Marriage of Ackerman* (2006) 146 Cal.App.4th 191, 207; see also *In re Marriage of Nelson* (2006) 139 Cal.App.4th 1546, 1560.)

In ordering spousal support, "'the trial court possesses broad discretion so as to fairly exercise the weighing process contemplated by section 4320, with the goal of accomplishing substantial justice for the parties in the case before it. . . .'" (*McLain, supra,* 7 Cal.App.5th at p. 269.) Once the court considers the marital standard of living along with the other mandatory statutory guidelines, it may award support ""at an amount greater than, equal to or less than what the supported spouse may require to maintain the marital standard of living, in order to achieve a just and reasonable result under the facts and circumstances of the case."" (*In re Marriage of Grimes & Mou*

---

[2] All statutory references are to the Family Code unless otherwise stated.

13

(2020) 45 Cal.App.5th 406, 425 (*Grimes & Mou*), quoting *In re Marriage of Williamson* (2014) 226 Cal.App.4th 1303, 1316.) We will not reverse the trial court's decision as to the amount of spousal support absent an abuse of discretion. (*McLain, supra,* at p. 269.) "An abuse of discretion occurs '"when it can be said that no judge reasonably could have made the same order."'" (*Grimes & Mou, supra,* at p. 424, quoting *In re Marriage of Meegan* (1992) 11 Cal.App.4th 156, 161.)

Here, the trial court's statement of decision reflects that it considered each of the statutory factors before setting the amount of spousal support. Instead of finding the marital standard of living as a specific monetary amount, the trial court discussed the parties living circumstances at various points in their marriage as well as their monthly income, expenses and other obligations. It noted that the parties enjoyed a subsidized, luxurious lifestyle while working in Mexico and Russia and that Husband's recent earnings were artificially inflated by a one-time severance payment from his prior employer and a signing bonus from his current employer. These findings adequately describe the parties' marital standard of living, even though the trial court did not assign it a specific monetary value.

Wife contends the trial court erred because the amount of monthly support awarded does not allow her to save and invest, as the parties did during the marriage. But the trial court's obligation in awarding spousal support is not to replicate precisely the parties' marital lifestyle and financial choices. It is to consider and weigh each of the circumstances enumerated in the statute to reach an award "'which will achieve a "just and reasonable" result in each case.'" (*In re Marriage of Drapeau* (2001) 93 Cal.App.4th 1086, 1096, quoting *In re Marriage of*

14

*Smith* (1990) 225 Cal.App.3d 469, 482.) As we noted above, the trial court considered each of the statutory circumstances before making its spousal support order. After imputing to Wife an annual income of $30,000, the judgment achieves rough parity in after-tax income to each party because Husband is estimated to receive approximately $115,200 per year while Wife receives $114,000. There was no abuse of discretion.

However, we agree with Wife that the provision in the judgment relating to permanent *Ostler-Smith* bonus spousal support requires clarification. Paragraph 4.1 of the judgment awards Wife an *Ostler-Smith* percentage "of any profit sharing based on the annual performance of Amgen. The profit sharing in the form of stock options is separate from the annual bonus which shall be excluded from Smith-Ostler payments. For the determination of the Smith-Ostler percentage, the corresponding Bonus Table from the Dissomaster attached to the Court's Statement of Decision, filed February 17, 2021, is attached to this Judgment as Attachment '1'." Attachment 1 to the judgment includes a Dissomaster report and a table entitled, "Father Annual Bonus Wages Report." The Dissomaster report indicates that guideline figures for spousal support are "blocked," while the bonus report has only zeros in the columns relating to spousal support.

We agree with Wife that paragraph 4.1 of the judgment is vague and requires clarification. The second sentence of that paragraph states, "The profit sharing in the form of stock options is separate from the annual bonus which shall be excluded from *Smith-Ostler* payments." It is not clear whether the phrase "which shall be excluded" applies to the "annual bonus," or to "profit sharing in the form of stock options." On the

15

one hand, the judgment can be read to award a percentage of any profit sharing based on Amgen's annual performance except for "the annual bonus." On the other hand, it could be read to award a percentage of profit-sharing based on Amgen's performance except for profit sharing received "in the form of stock options. . . ." Adding to the ambiguity is the evidence that Husband receives annual bonus income in cash and in different forms of non-cash compensation, referred to as "Restricted Stock Units," "Dividend Equivalent Units," "Nonqualified Stock Units" and "Performance Units," but not "stock options." It is not clear whether the trial court has used the term "stock options," as short-hand for any, some or all of these forms of bonus compensation.

The judgment's reference to an attached Dissomaster report and bonus table compounds the confusion. Neither document specifies any percentage of any form of income to be paid as spousal support. To the contrary, line items for spousal support are "blocked" in the Dissomaster report, and the bonus table contains only zeros in the columns for spousal support. This is in contrast to, for example, the temporary support order which attaches a bonus table that shows percentages and specific dollar amounts in the columns for spousal support.

The trial court appears to have awarded Wife some percentage of Husband's annual bonus compensation that is greater than zero. Such an award is necessary to allow Wife to maintain the marital standard of living and to achieve a just and reasonable result under the facts of this case. (*Grimes & Mou*, *supra*, 45 Cal.App.5th at p. 425.) Failure to award Wife a reasonable percentage of Husband's future annual bonus income would appear to be an abuse of discretion under these

circumstances.  Paragraph 4.1 of the judgment as written, however, fails to specify with sufficient clarity both the components of Husband's bonus compensation to which the *Ostler-Smith* calculation applies and the percentage of that compensation (above zero) to which Wife is entitled.  We will remand the matter to the trial court to permit it to clarify that portion of the judgment.

Wife contends the trial court abused its discretion because the judgment does not include a bonus income disclosure requirement nor does it require Husband to post security for his obligations.  We are not persuaded.  There is no substantial evidence that Husband has concealed assets or compensation to which the judgment would apply nor is there any indication that Husband has failed to make timely support payments.  Under these circumstances we cannot conclude the trial court abused its discretion by omitting disclosure or security provisions from the judgment.

Attorney Fees. The judgment provides that Husband "shall pay 60% of [Wife's] attorney fees and costs incurred by [her counsel] on behalf of [Wife].  Accounting fees shall not be included in the category of litigation costs. Each side shall bear their own costs for accountants."  The judgment further provides, "The Court finds that neither [writ] petition filed by [Wife] was either reasonable or necessary and any fees and all costs associated with the appellate petitions are the sole responsibility of [Wife]." The trial court also declined to award Wife fees or costs relating to the contempt petition she filed against Husband, finding the petition "was neither reasonable nor necessary . . . ."

Wife contends the trial court erred when it denied recovery of fees and costs incurred on the writ petitions and the

17

contempt petition. She further contends the trial court should have ordered Husband to pay her accounting fees and other expert witness costs.  We agree, in part.

Wife filed two petitions for writ of mandate relating to child custody issues.  One of those petitions was successful. The trial court had entered an order adopting a mediator's recommendations regarding child custody and visitation without first affording Wife the opportunity to question the mediator at an evidentiary hearing.  Our order suggested that the trial court reconsider in light of *McLaughlin, supra,* 140 Cal.App.3d 473. Following our direction, the trial court held an evidentiary hearing at which it limited Wife's cross-examination of the mediator to 30 minutes.  After hearing her testimony, the trial court entered a new order adopting her recommendations.  In declining to award Wife attorney fees and costs relating to the writ petition, the trial court referred to this result as a "Pyrrhic victory."

At a status conference six months later, the trial court set a trial date over the objection that Wife's counsel was unavailable.  Wife filed another petition for writ of mandate which we denied.  The trial proceeded as scheduled.

Wife also filed a petition to hold Husband in contempt for what she characterized as violations of the custody and visitation orders and the temporary support orders.  The trial court issued an order to show cause.  It later dismissed the petition without a hearing.

Wife contends the trial court erred when it declined to award her attorney fees and costs associated with the writ petitions and contempt petition.  "To warrant an award of fees on appeal, four conditions must be met:  (1) the requesting spouse

must show a need for the award; (2) the paying spouse must have the ability to pay the fees; (3) the appeal must be taken in good faith; and (4) there must be reasonable grounds for the appeal in the sense that reasonable persons should believe that the contentions merit the appellate court's attention and resolution." (*In re Marriage of Macfarlane & Lang* (1992) 8 Cal.App.4th 247, 258.) A party may recover fees even if they do not prevail on appeal. (*Ibid.*) We review the trial court's order denying appellate fees for abuse of discretion. (*Nakamoto & Hsu, supra,* 79 Cal.App.5th at p. 474.)

We conclude the trial court abused its discretion when it declined to award Wife the fees and costs she incurred on the first writ petition. These fees and costs were incurred because, contrary to *McLaughlin v. Superior Court, supra,* the trial court refused to hold an evidentiary hearing before adopting the mediator's recommendations to modify child custody and visitation. We issued the suggestive order because Wife had a due process right to cross-examine the mediator and the trial court declined to give her that opportunity. That the trial court ultimately adopted the mediator's recommendations does not mean the petition was filed in bad faith or without reasonable cause. In light of our suggestive order, there can be no doubt that Wife had reasonable grounds and acted in good faith when she filed the writ petition. The trial court's failure to award her attorney fees and costs associated with the petition was an abuse of discretion.

We reach the opposite conclusion with respect to the second writ petition and the contempt petition. There the trial court made orders that were squarely within the trial court's broad discretion. As a result, the trial court had a rational basis

19

for concluding that Wife lacked reasonable grounds for filing these petitions. Declining to award fees for them was not erroneous.

Wife contends the trial court erred when it denied recovery of fees and costs she incurred for her expert witnesses, including a forensic accountant and a forensic and clinical psychologist. There was no abuse.

In its statement of decision, the trial court noted that the parties spent what it described as "an enormous sum" on this case. It described the case as having, "some intricate financial issues, but no sinkhole of time such as often exists in evaluating a business or a professional practice." Both parties had adopted a "scorched earth mentality" and the case was "overlawyered," on both sides. The parties represented that they were willing to negotiate, but neither party would make a settlement offer. This left the trial court "to deal with hundreds of thousands of dollars in claimed attorneys fees, accountant fees, and expert witness fees to be paid by parties who will suffer deep financial wounds no matter what the Court orders." It concluded that the "litigation got out of hand, and once the snowball started rolling downhill, neither side could (or would) stop it."

The trial court's discretion to award attorney's fees and costs under sections 2030 and 2032 extends to "financial experts, other experts, witness fees, and other costs . . . ." (*In re Marriage of Tharp* (2010) 188 Cal.App.4th 1295, 1315.) "It is well established in California that, although the trial court has considerable discretion in fashioning a need-based fee award [citation], the record must reflect that the trial court actually exercised that discretion, and considered the statutory factors in exercising that discretion." (*In re Marriage of Braud* (1996) 45

20

Cal.App.4th 797, 827.) In assessing the parties' needs and ability to pay, "the family court may consider all evidence concerning the parties' current incomes, assets, and abilities, including investment and income-producing properties. Further, in determining whether to award attorney fees to one party, the family court may consider the other party's trial tactics. [Citation.]" (*In re Marriage of Tharp, supra,* at pp. 1313-1314.)

Here, the record reflects that the trial court considered Wife's ability to pay fees and costs, and need for financial assistance to litigate in a comparable manner as Husband. It concluded that both parties incurred substantial fees without making any serious attempt to settle their financial disputes. It appears also to have found that the parties were equally responsible for this circumstance and that both parties had the ability to pay costs associated with their intransigence. We cannot say that this was an abuse of discretion.

Modification of Child Support. In mid-July 2019, the parties' then-15-year-old daughter moved into Husband's house. In February 2020, Husband requested a modification of temporary child and spousal support based, in part, on the ground that the daughter no longer lived with Wife. The trial court, in its February 2021 statement of decision, granted the motion. It found that Husband was no longer obligated to pay support for the daughter because the daughter was then living with him. Relying on *Jackson v. Jackson* (1975) 51 Cal.App.3d 363 (*Jackson*), the trial court ordered Wife to reimburse Husband $27,150, the amount of child support he paid for daughter after she moved. Wife contends the trial court erred in modifying child support to a date before Husband filed his request for order (RFO).

21

Section 3653 permits the trial court to modify or terminate a support order and to "make its ruling retroactive to the filing date of the [RFO], but no earlier." (*Cheriton, supra,* 92 Cal.App.4th at p. 300.) An order modifying support retroactive to a date before the filing of an RFO "would be in excess of the court's jurisdiction." (*Stover v. Bruntz* (2017) 12 Cal.App.5th 19, 26.) The obligation to pay child support, however, "is to the child, and not to the mother." (*Jackson, supra,* 51 Cal.App.3d at p. 367.) While it lacks jurisdiction to reduce or modify support arrearages, the trial court does have discretion to determine the manner in which the support obligation will be enforced. (See, e.g., *Keith G. v. Suzanne H.* (1998) 62 Cal.App.4th 853, 858-859.) It also has discretion to order reimbursement for overpayments. (§ 3653, subd. (d).)

Here, daughter moved into Husband's home in July 2019; seven months later, Husband moved to modify his child support obligation. The trial court terminated Husband's obligation to pay child support as of the date she moved into his home and ordered Wife to reimburse him for support payments made after that date. We conclude the order was not in excess of the court's jurisdiction or an abuse of discretion because Husband was solely responsible for daughter's support after she moved. In effect, he discharged the obligation to support daughter by caring for her in his own home. The trial court did not err in concluding Husband should not be required to pay twice for the daughter's support.

<u>Retroactive Base Spousal Support.</u> Wife contends the trial court erred because it did not award retroactive base spousal support for the period between July 1, 2018 and December 1, 2018. The trial court did not order any additional spousal

22

support, concluding instead that "No further orders are necessary." The trial court did not err. In the period between July and December 2018, the parties' living expenses were paid from a community bank account. Consequently, there was no need for a support order covering that period.

*Disposition*

The matter is remanded to the trial court with instructions to determine whether Husband is in arrears on temporary spousal support by applying the definition of separate property gross income included in the November 28, 2018 order. Further, the trial court shall clarify the forms of Husband's bonus and profit-sharing compensation from which spousal support shall be paid and the percentage(s) of that compensation to which Wife is entitled. The judgment is reversed to the extent it denies Wife recovery of attorney's fees and costs associated with the petition for writ of mandate filed November 22, 2019. On remand, the trial court shall include those fees and costs in the award provided in paragraph 8.1 of the judgment. In all other respects, the judgment is affirmed. Costs on appeal to Wife.

NOT TO BE PUBLISHED.


YEGAN, J.

We concur:


GILBERT, P. J.


CODY, J.

23

Henry J. Walsh, Judge

Superior Court County of Ventura

_____

Law Offices of Gregory R. Ellis and Gregory R. Ellis, for Appellant.

Richard Ross Associates and Richard Ian Ross; Ferguson Case Orr Paterson and Wendy C. Lascher, for Respondent.